# **Exhibit A**

DIP Commitment Letter and Budget

# CASTELLAN
## CAPITAL

122 East 42nd Street Suite 1903
New York, NY 10168
646.545.6700

~~January~~ FEBRUARY 3, 2025

Madison 33 Owner LLC
c/o David Goldwasser, CRO
FIA Capital Partners, LLC
3284 N. 29th Court
Hollywood, FL 33020-1320

Re:    172 Madison Avenue, New York, NY 10016

Dear Mr. Goldwasser:

Castellan Capital LLC or an affiliate ("the Lender") is pleased to provide the following Letter of Interest to the Borrower to consider making a senior priming DIP loan pursuant to 11 U.S.C. Section 364(d) secured by a first primary lien encumbering certain residential and commercial units owned by Madison 33 Owner LLC at the above referenced property (the "Property"). The loan shall hereinafter be defined as the DIP Loan (the "DIP Loan"). The terms of this Letter of Interest are subject to ratification by the Lender's Investment Committee and include the following:

| | |
|---|---|
| **Borrower:** | Madison 33 Owner LLC |
| **Key Principals:** | Yitzchak Tessler |
| **DIP Loan Amount:** | $22,000,000 |
| **Minimum Square Footage:** | To be compiled |
| **Collateral:** | The DIP Loan shall be secured by: |

1. First priority "priming" mortgage lien pursuant to 11 U.S.C. Section 364(d) covering units PHA, PHB, PHC, PHD, PH Sky, CV-A, CV-B, 11B, 15B, 17B, 18B and 27A and at the above referenced Property, together with all related rights (the "Pledged Units");

2

|  |  |
|---|---|
|  | 2. Assignment and security interest in all current and future leases relating to the Pledged Units; |
|  | 3. Assignment of all plans, contracts, approvals, licenses, and permits; |
|  | 4. UCC liens on all personal property, equipment and fixtures in the Pledged Units; and |
|  | 5. Completion Guarantee for C of O and Condo Book. |
| **DIP Loan Term:** | Twenty-Four (24) Months. |
| **Origination Fee:** | 3% ($660,000.00) with Lender to pay brokerage. |
| **Interest Rate:** | 30 Day AMERIBOR (AMBOR30T) + 5.12%, with a floor rate of 9.25% adjustable monthly. Interest will be calculated on an actual/360 basis and paid current on a monthly basis. Payments shall be due on the first (1st) day of each month and shall be paid by wire transfer. A late fee of 6.0% shall apply to any payments (inclusive of any escrow payments) received after the fifth (5th) day of the month. If Lender accepts a pro rata portion of any monthly payment, Borrower shall nonetheless pay a late fee equal to 6% of the total amount that should have been paid. Notwithstanding the foregoing, in no event shall Lender charge interest in excess of the maximum lawful rate applicable to the DIP Loan. |
| **Prepayment:** | **NO PREPAYMENT PENALTY.** |
| **Minimum Interest:** | **NO MINIMUM INTEREST PERIOD.** |
| **Recourse:** | The DIP Loan shall be fully recourse to the Borrower and shall be subject to Bankruptcy Court approval pursuant to a DIP financing motion in form satisfactory to Lender and its counsel and providing good faith Lender protections. If approved the terms of the DIP Order shall be incorporated as part of the Borrower's plan of reorganization, with the treatment of the Lender's claim to be consistent therewith. The Borrower shall be obligated for reimbursement of payment with respect to all expenses, including but not limited to payment of principal, interest and fees on debt in excess of the interest reserve, property operating expenses, real estate taxes, insurance premiums and related fees, and performance of Borrower's other monetary obligations under the loan documents. |

2

**Estimated Sources and Uses:**

| Sources | | |
|---|---|---|
| DIP Loan Amount | $22,000,000.00 | 100.00% |
| **Total Sources** | **$22,000,000** | **100.00%** |
| **Uses** | | |
| Origination Fee | $660,000.00 | 3% |
| Outstanding RE Taxes | $2,820,564 | |
| 2025 Ad-Valorem Tax Reserve | $490,325.00 | |
| Hard Costs to Finish Project | $13,522,761.00 | |
| Construction Reserve | $677,239.00 | |
| DIP Loan Interest Reserve | $2,519,000.00 | |
| Closing Costs | $50,000.00 | |
| Lender's Legal Fee | $50,000.00 | |
| Ch 11 Professional Fees | $275,000.00 | |
| Post-Petition Condo Charges | $178,010.12 | |
| 2025 Condo Charges Reserve | $534,030.36 | |
| Other Contingency | $223,070.52 | |
| **Total Uses** | **$22,000,000** | **100.00%** |

**Interest Reserve:** At closing, the Lender shall establish an Interest Reserve equal to approximately Two Million Five Hundred and Nineteen Thousand Dollars ($2,519,000) to be released. To the extent there is any shortfall, Borrower shall pay the difference in accordance with the terms of the Note.

**Construction Reserve:** At closing, the Lender shall establish from the loan proceeds a Construction Reserve account of approximately Fourteen Million and Two Hundred Thousand Dollars ($14,200,000) to be drawn upon for work completed on the Pledged Units per the approved budget. Borrower shall provide invoices, lien release waivers and any other requested documentation at Lender's reasonable discretion under a certified requisition prior to disbursement. Interest shall only be charged on Construction Reserve funds once disbursed.

**Other Costs:** Borrower agrees to reimburse Lender at closing for any share of taxes due from Lender for mortgage

2

|  |  |
|---|---|
|  | recording or property transfer, it being understood that the DIP Loan shall be subject to conventional loan documents and recordable mortgage instruments. |
| **Subordinate Financing:** | No senior or *pari passu* financing will be permitted against the Pledged Units. |
| **Assumability:** | The DIP Loan is not assumable or assignable by the Borrower, and must be restated and reconfirmed under the plan of reorganization which shall not impair the DIP Loan in any way. |
| **Transferability/Release Prices:** | The DIP Loan shall be due upon the sale or transfer of any of the Pledged Units pursuant to agreed release prices. |
| **Application Fee:** | $40,000, including the $15,000 pre-paid deposit funded by third parties. |
| **Survey:** | A survey shall be required. The costs shall be paid by the Borrower. |
| **Exclusivity:** | Borrower and Key Principal(s) agree and acknowledge that Lender is devoting resources to the underwriting and analysis of the DIP Loan at the exclusion of other business opportunities and that financing opportunities are limited and extremely competitive. Accordingly, the Borrower and Key Principal(s) agree, upon issuance of a commitment letter, to cease all discussion with any financing sources and work solely with Lender to complete due diligence and obtain Bankruptcy Court approval of the DIP Loan. |
| **Construction Schedule:** | The Borrower shall provide the Lender with a Construction Schedule prior to closing subject to the Lender's consent, not be unreasonably withheld. |
| **Construction Budget:** | The Borrower shall provide the Lender with a Construction Budget prior to closing subject to the Lender's consent, not be unreasonably withheld. |
| **Funding Conditions:** | Pursuant to the agreed upon project budget, total project costs in excess of the DIP Loan Amount shall be contributed by the Borrower or the Borrower's principals. The Borrower shall fund all equity required prior to the Lender disbursing Construction |

2

|  |  |
|---|---|
|  | Reserve funds. The architect, construction manager, and general contractor shall be approved by the Lender. Subcontracts for at least 75% of the hard costs shall be approved by the Lender, subject to an agreed construction budget. The Lender's construction consultant shall review and approve the plans, drawings, specifications, permits, contracts, approvals, and project budget, at the Borrower's expense. The Borrower shall furnish the Lender a certification that the plans and specifications comply with all applicable laws and regulations, a complete detailed budget, and a set of approved plans and specifications. Each advance shall be used solely to fund work completed per the agreed upon construction budget and certified requisition. |
| **Other:** | Upon Borrower's acceptance of this Letter of Interest and payment of the Application Deposit as outlined herein, Lender shall commence its due diligence and the documentation of the DIP Loan based on terms outlined herein. Such documentation shall include Lender's loan documentation including but not limited to: DIP mortgage, and note, loan agreement, environmental indemnity agreement, security agreement, assignment of leases and rents, an opinion letter from Borrower's counsel as the first priority status based upon Bankruptcy Court Order, and other documents, instruments, and/or undertakings as required by Lender and Lender's counsel. Notwithstanding the foregoing, Lender reserves the right to modify the terms of the DIP Loan in its sole discretion based upon facts and circumstances learned during the conduct of its due diligence. The Lender reserves the right to participate, sell or assign its interest in the DIP Loan to another Lender or investor and that the credit information related to the DIP Loan request may be disclosed to such participant Lender. Borrower agrees to cooperate with Lender in obtaining or providing information to facilitate any participation or sale. Any expenses incurred by Lender in this process will be paid by the Lender. |
| **Title Insurance:** | Title Insurance shall be provided by a commercially reputable insurer acceptable to Lender. |
| **Title Policy:** | The DIP Loan is contingent on the Borrower providing a title report that is to be reviewed by |

2

|  |  |
|---|---|
|  | Lender and subject to the Lender's attorney approval. |
| **Brokerage Fees:** | Brokerage fee shall be paid by Lender and not added to the DIP Loan Amount. |
| **Property Tax Escrow:** | The Borrower shall remit to Lender at closing an amount sufficient to fund an escrow account for real estate taxes for one year from the date of closing. In the event real estate taxes shall increase during the term of the DIP Loan, Borrower shall be required to fund such additional amount as determined by Lender in order to maintain sufficient funds to pay such taxes as the same become due. |
| **Insurance:** | The Borrower shall provide evidence that the insurance premiums for one year from the date of closing are paid in full. |
| **Water & Sewer Escrow:** | The Borrower will remit to the Lender at closing an amount sufficient to fund an escrow account for water and sewer bills for one year from the date of closing. In the event the water and sewer bills shall increase during the term of the DIP Loan, Borrower shall be required to fund such additional amount as determined by Lender in order to maintain sufficient funds to pay such water and sewer bills as the same become due. |
| **Indemnity:** | Subject to Bankruptcy Court approval, Borrower hereby agrees to defend, indemnify, exonerate, and hold harmless Lender and each of its officers, directors, investors, affiliates, employees and agents (the "Indemnities") from and against any and all liabilities, obligations, losses, damages, claims, actions, suits, proceedings, judgments, costs and expenses, including legal fees and other expenses incurred in the investigation, defense, appeal and settlement of claims, actions, suits and proceedings incurred by the Indemnities or any of them relating to this Letter of Interest. |
| **Letter of Interest:** | Borrower understands and agrees that this Letter of Interest is provided by Lender may be submitted to the Court subject to due diligence. As such the terms set forth herein are not binding upon Lender unless and until the results of due diligence are satisfactory and the Bankruptcy Court approves same, Lender |

2

may withdraw from such discussion at any time within five (5) days of the expiration of due diligence and for any reason in Lender's sole and absolute discretion. Borrower further understands and agrees that Lender is not obligated to enter into the transaction contemplated by this Letter of Interest, on the terms set forth herein unless and until the Lender is satisfied with due diligence and the Bankruptcy Court approves the same. Notwithstanding the foregoing, Borrower understands and acknowledges that all of its representations, warranties, covenants and obligations are binding and enforceable against it, and Lender is relying on same to enter into this Letter of Interest and proceed with due diligence.

**Offer Expiration:** This letter (unless countersigned and returned along with the Application Deposit) shall expire five (5) days from the date of this letter.

This letter does not constitute a commitment or approval to lend in any manner. Any commitment by Lender to lend is contingent upon the completion and ratification by Lender's Investment Committee of our due diligence review.

**BORROWER ACKNOWLEDGES THAT THIS IS A NON-BINDING LETTER OF INTEREST AND IN NO WAY REPRESENTS A COMMITMENT OR APPROVAL TO LEND.**

Sincerely,

Paul Salib Managing Principal
Castellan Capital LLC

*Agreed and Accepted:*

Borrower:

By: _____[signature]_____

Its: _____M.M._____

2

## Wire Instructions:

| | |
|---|---|
| Receiving Bank: | Webster Bank, N.A. |
| Receiving Bank Address: | 489 Fifth Avenue, 17th Floor, New York, NY 10017 |
| Receiving Bank Routing #: | 221970443 |
| Beneficiary Name: | Castellan Real Estate Income Fund II LP – Deposit Account |
| Beneficiary Account #: | 6700362739 |
| Beneficiary Address: | 122 East 42nd Street, Suite 1903, New York, NY 10168 |
| SWIFT Code: | STETUS33 (For International Wires Only) |