**<u>Exhibit B</u>**

AIA

DRAFT ## AIA® Document A103™ – 2017

### Standard Form of Agreement Between Owner and Contractor
*where the basis of payment is the Cost of the Work Plus a Fee.*

**AGREEMENT** made as of the « 2nd » day of « September » in the year « 2024»
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

**Madison 33 owner LLC**
**C/O Yitzchak Tessler**
**172 Madison Ave, Unit 27A New York, NY 10016**

and the Contractor:
*(Name, legal status, address and other information)*

**Spectra Construction and Development Corp.**
**554 5th Ave, 5th Floor, New York, NY 10036**

for the following Project:
*(Name, location and detailed description)*

**172 Madison Ave**
**New York, NY 10016**
**Alteration of PH Units, floors 28-31**

The Architect:
*(Name, legal status, address and other information)*

**ODA Architecture**
**99 Hudson Street, Second Floor**
**New York, NY 10013**

The Owner and Contractor agree as follows.



**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

The parties should complete A103™-2017, Exhibit A, Insurance and Bonds, contemporaneously with this Agreement. AIA Document A201™-2017, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**ELECTRONIC COPYING** of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                          (1648720211)

1

## TABLE OF ARTICLES

1     THE CONTRACT DOCUMENTS

2     THE WORK OF THIS CONTRACT

3     RELATIONSHIP OF THE PARTIES

4     DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

5     CONTRACT SUM

6     CHANGES IN THE WORK

7     COSTS TO BE REIMBURSED

8     COSTS NOT TO BE REIMBURSED

9     DISCOUNTS, REBATES AND REFUNDS

10    SUBCONTRACTS AND OTHER AGREEMENTS

11    ACCOUNTING RECORDS

12    PAYMENTS

13    DISPUTE RESOLUTION

14    TERMINATION OR SUSPENSION

15    MISCELLANEOUS PROVISIONS

16    ENUMERATION OF CONTRACT DOCUMENTS

EXHIBIT A    SCHEDULE OF VALUES
EXHIBIT B    INSURANCE

## ARTICLE 1   THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement, all of which form the Contract and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern. An enumeration of the Contract Documents, other than a Modification, appears in Article 16. Notwithstanding anything else contained herein, prior to the Date of Commencement and prior to Contractor providing a Control Estimate pursuant to § 5.2, Owner shall provide Contractor with one (1) current, coordinated, and consolidated set of Drawings which shall serve as the basis of the Work and Control Estimate.

## ARTICLE 2   THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3   RELATIONSHIP OF THE PARTIES

The Contractor has entered into this Agreement with Owner in order to replace a previous Contractor that has performed a portion of the Work prior to the date hereof. The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                              (1648720211)

and supervision; to always furnish an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION
**§ 4.1** The date of commencement of the Work shall be:
*(Check one of the following boxes.)*

[          ]The date of this Agreement.

**[NOVEMBER,2024]** A date set forth in a notice to proceed issued by the Owner.

[ **« OR »** ]   Established as follows:
*(Insert a date or a means to determine the date of commencement of the Work.)*

**The date on which General Contractor on the Project's will obtain the full DOB Permit.**

**§ 4.2** The Contract Time shall be measured from the date of commencement of the Work.

### § 4.3 Substantial Completion
**§ 4.3.1** Subject to adjustments of the Contract Time as provided in the Contract Documents, the Contractor shall achieve Substantial Completion of the entire Work:

*(Check one of the following boxes and complete the necessary information.)*

[ **« X »** ]  Not later than **«Three Hundred Sixty Five » ( «365» )** calendar days from the date of commencement of the Work.

[ **« »** ]   By the following date: « »

Substantial Completion of the Work is defined as the date on which the Contractor requests a Construction Inspection with the New York City Department of Buildings.

## ARTICLE 5    CONTRACT SUM
**§ 5.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract.
The Total Contract Sum inclusive of General Conditions, Fees and Insurance is:

## $13,522,753 (see Exhibit A – Schedule of Values)

**§ 5.1.1** The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work, or other provision for determining the Contractor's Fee.)*

- **General Conditions – 10%**
- **Subtotal of Cost of the Work x General Conditions**
- **Fee – 5%**
- **Subtotal of Cost of the Work x General Conditions x Fee**
- **Insurance – 4.5%**
- **Subtotal of Cost of the Work x General Conditions x Fee x Insurance**
- **Contingency – TBD - Not Included in the Contract**

**§ 5.1.2** The method of adjustment of the Contractor's Fee for changes in the Work:

- **Changes in the Work shall be subjected to a markup total of 18%.**

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                        (1648720211)

**§ 5.1.3** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

« N/A »

**§ 5.1.4** Other:

«**Completion Bonus. Contractor shall be entitled to a completion bonus in the amount of two hundred thousand dollars ($200,000.00) which shall be deemed earned and payable upon Substantial Completion within the time allotted in the Contract Documents.** »

### § 5.2 Control Estimate
**§ 5.2.1** The Contractor shall prepare and submit to the Owner, in writing, a Control Estimate within thirty (30) days of executing this Agreement. The Control Estimate shall include the estimated Cost of the Work plus the Contractor's Fee. The Control Estimate shall be used to monitor actual costs and the timely performance of the Work. The Contractor shall update the Control Estimate with each Application for Payment as needed to reflect changes in the Work.

**§ 5.2.2** The Control Estimate shall include:
- .1 the documents enumerated in Article 16, including all Modifications thereto.
- .2 a list of the assumptions made by the Contractor in the preparation of the Control Estimate, including assumptions under Section 5.2, to supplement the information provided by the Owner and contained in the Contract Documents.
- .3 a statement of the estimated Cost of the Work organized by trade categories or systems and the Contractor's Fee.
- .4 a project schedule upon which the Control Estimate is based, indicating proposed construction activities, activity sequences and durations, milestone dates, schedule of shop drawings, delivery of materials or equipment
- .5 Allowances (as defined herein)
- .6 Proposed AIA G702 and G703

**§ 5.2.3** The Contractor shall meet with the Owner and Architect to review the Control Estimate. In the event that the Owner or Architect discovers any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Contractor, who shall make appropriate adjustments to the Control Estimate. When the Control Estimate is acceptable to the Owner, the Owner shall acknowledge it in writing. The Owner's acceptance of the Control Estimate does not imply that the Control Estimate constitutes a Guaranteed Maximum Price.

**§ 5.2.4** To the extent that the Contract Documents are anticipated to require further development, the Contractor shall provide in the Control Estimate for such further development consistent with the Contract Documents and reasonably inferable therefrom ("Allowances"). Items covered by Allowances shall be supplied for such amounts by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection. Such further development does not include changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated in a revised Control Estimate by mutual agreement of the parties. Unless otherwise provided in the Contract Documents, (i) Allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts; (ii) Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Control Estimate; and (iii) whenever costs are more than or less than Allowances, the Control Estimate shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under section 5.2.4(i) and (2) changes in Contractor's costs under section 5.2.4.(ii).

**§ 5.2.5** The Owner shall authorize preparation of revisions to the Contract Documents that incorporate the agreed-upon assumptions contained in the Control Estimate. The Owner shall promptly furnish such revised Contract Documents to the Contractor. The Contractor shall notify the Owner and Architect of any inconsistencies between the Control Estimate and the revised Contract Documents.

## ARTICLE 6    CHANGES IN THE WORK
**§ 6.1** The Owner may, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions. The Owner shall issue such changes in writing. The

AIA Document A103™ – 2017. Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
User Notes:                                                                                                          (1648720211)

Architect may make minor changes in the Work as provided in Article 7 of AIA Document A201™–2017, General Conditions of the Contract for Construction. The Contractor shall be entitled to an equitable adjustment in the Contract Time and additional costs as a result of changes in the Work. The Contractor shall incorporate all changes in the Work and Contract Time as separate entries in the Control Estimate.

**§ 6.2** Increased costs for the items set forth in Article 7 which result from changes in the Work shall become part of the Cost of the Work, and the Contractor's Fee shall be adjusted as provided in Article 5.

**§ 6.3** If the Contractor receives any drawings, specifications, interpretations or instructions from the Owner or Architect which are inconsistent with the Contract Documents, or encounters unanticipated conditions or non-conforming work performed by the previous Contractor or any of Contractor and/or Owners' subcontractors which directly or indirectly affects the Contractor's Work, any of which will result in a significant change in the Cost of the Work or estimated date of Substantial Completion in comparison with the Control Estimate, the Contractor shall promptly notify the Owner and Architect in writing and shall not proceed with the affected Work until the Contractor receives further written instructions from the Owner and Architect.

**§ 6.4** If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work.

## ARTICLE 7    COSTS TO BE REIMBURSED
### § 7.1 Cost of the Work
**§ 7.1.1** The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. The Cost of the Work shall include only the items set forth in this Article 7.

**§ 7.1.2** Where, pursuant to the Contract Documents, any cost is subject to the Owner's prior approval, the Contractor shall obtain such approval in writing prior to incurring the cost.

**§ 7.1.3** Costs shall be at rates not higher than the standard paid at the place of the Project, except with prior approval of the Owner.

### § 7.2 Labor Costs
**§ 7.2.1** Wages or salaries of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops.

**§ 7.2.2** Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site and performing Work, with the Owner's prior approval.

**§ 7.2.2.1** Wages or salaries of the Contractor's supervisory and administrative personnel when performing Work and stationed at a location other than the site, but only for that portion of time required for the Work, and limited to the personnel and activities listed below:
*(Identify the personnel, type of activity and, if applicable, any agreed upon percentage of time to be devoted to the Work.)*

« N/A »

**§ 7.2.3** Wages or salaries of the Contractor's supervisory or administrative personnel engaged at factories, workshops or while traveling, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

**§ 7.2.4** Costs paid or incurred by the Contractor, as required by law or collective bargaining agreements, for taxes, insurance, contributions, assessments, and benefits and, for personnel not covered by collective bargaining agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                              (1648720211)

**§ 7.2.5** If agreed rates for labor costs, in lieu of actual costs, are provided in this Agreement, the rates shall remain unchanged throughout the duration of this Agreement, unless the parties execute a Modification.

### § 7.3 Subcontract Costs
Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts and this Agreement.

### § 7.4 Costs of Materials and Equipment Incorporated in the Completed Construction
**§ 7.4.1** Costs, including transportation and storage at the site, of materials and equipment incorporated, or to be incorporated in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

**§ 7.4.3** Costs of Contractor's general conditions, fee, and insurance for materials supplied by Owner

### § 7.5 Costs of Other Materials and Equipment, Temporary Facilities and Related Items
**§ 7.5.1** Costs of transportation, storage, installation, dismantling, maintenance, and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment, and tools, that are not fully consumed, shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and the costs of transportation, installation, dismantling, minor repairs, and removal of such temporary facilities, machinery, equipment, and hand tools. Rates and quantities of equipment owned by the Contractor, or a related party as defined in Section 7.8, shall be subject to the Owner's prior approval. The total rental cost of any such equipment may not exceed the purchase price of a comparable item.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of the Contractor's site office, including general office equipment and supplies.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location.

### § 7.6 Miscellaneous Costs
**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract.

**§ 7.6.1.1** Costs for self-insurance, for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.

**§ 7.6.1.2** Costs for insurance through a captive insurer owned or controlled by the Contractor, with the Owner's prior approval.

**§ 7.6.2** Sales, use, or similar taxes, imposed by a governmental authority, that are related to the Work and for which the Contractor is liable.

**§ 7.6.3** Fees and assessments for the building permit, and for other permits, licenses, and inspections, for which the Contractor is required by the Contract Documents to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents; except those related to defective or nonconforming Work for which reimbursement is excluded under Article 13 of AIA Document A201–2017 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                                (1648720211)

6

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process, or product, required by the Contract Documents.

**§ 7.6.5.1** The cost of defending suits or claims for infringement of patent rights arising from requirements of the Contract Documents, payments made in accordance with legal judgments against the Contractor resulting from such suits or claims, and payments of settlements made with the Owner's consent, unless the Contractor had reason to believe that the required design, process, or product was an infringement of a copyright or a patent, and the Contractor failed to promptly furnish such information to the Architect as required by Article 3 of AIA Document A201–2017. The costs of legal defenses, judgments, and settlements shall not be included in the Cost of the Work used to calculate the Contractor's Fee.

**§ 7.6.6** Costs for communications services, electronic equipment, and software, directly related to the Work and located at the site, with the Owner's prior approval.

**§ 7.6.7** Costs of document reproductions and delivery charges.

**§ 7.6.8** Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 7.6.9** Legal, and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor after the execution of this Agreement in the performance of the Work and with the Owner's prior approval, which shall not be unreasonably withheld.

**§ 7.6.10** Expenses incurred in accordance with the Contractor's standard written personnel policy for relocation and temporary living allowances of the Contractor's personnel required for the Work, with the Owner's prior approval.

**§ 7.6.11** That portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

**§ 7.6.12** Due to the Cost-Plus nature of the Agreement, any costs, fees (including attorneys' fees), expenses, claims associated with any subcontractor(s) failure to complete its Work in accordance with the Contract Documents.

### § 7.7 Other Costs and Emergencies
**§ 7.7.1** Other costs incurred in the performance of the Work, with the Owner's prior approval.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury, or loss, in case of an emergency affecting the safety of persons and property, as provided in Article 10 of AIA Document A201–2017.

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors, or suppliers, provided that such damaged or nonconforming Work was not caused by negligence of, or failure to fulfill a specific responsibility by, the Contractor, and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others. The foregoing notwithstanding, Contractor shall have no duty to pay, replace, defend, indemnify, or hold harmless Owner or Architect for any costs, including repairing or correcting damaged or nonconforming Work, mechanic's liens, or the consequential results thereof, incurred as result of the failure of the portions of the Work performed prior to the Date of Commencement. Owner shall defend, indemnify, and hold harmless Contractor for any costs, fees (including attorney's fees), or expenses, and including repairing or correcting damaged or nonconforming Work, incurred as result of the failure of the portions of the Work performed prior to the Date of Commencement, directly or indirectly, by any previous Contractor or Owner's assigned subcontracts or purchase orders.

### § 7.8 Related Party Transactions
**§ 7.8.1** For purposes of Section 7.8, the term "related party" shall mean (1) a parent, subsidiary, affiliate, or other entity having common ownership of, or sharing common management with, the Contractor; (2) any entity in which any stockholder in, or management employee of, the Contractor holds an equity interest in excess of ten percent in the aggregate; (3) any entity which has the right to control the business or affairs of the Contractor; and (4) any person, or any member of the immediate family of any person, who has the right to control the business or affairs of the Contractor.

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                          (1648720211)

**§ 7.8.2** If any of the costs to be reimbursed arise from a transaction between the Contractor and a related party, the Contractor shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction in writing, then the cost incurred shall be included as a cost to be reimbursed, and the Contractor shall procure the Work, equipment, goods, or service, from the related party, as a Subcontractor, according to the terms of Article 10. If the Owner fails to authorize the transaction in writing, the Contractor shall procure the Work, equipment, goods, or service from some person or entity other than a related party according to the terms of Article 10.

## ARTICLE 8    COSTS NOT TO BE REIMBURSED
**§ 8.1** The Cost of the Work shall not include the items listed below:

.1    Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Section 7.2, or as may be provided in Article 15.

.2    Bonuses, profit sharing, incentive compensation, and any other discretionary payments, paid to anyone hired by the Contractor or paid to any Subcontractor or vendor, unless the Owner has provided prior approval.

.3    Expenses of the Contractor's principal office and offices other than the site office.

.4    Overhead and general expenses, except as may be expressly included in Article 7.

.5    The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.

.6    Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence of, or failure to fulfill a specific responsibility of the Contract by, the Contractor, Subcontractors, and suppliers, or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

## ARTICLE 9    DISCOUNTS, REBATES AND REFUNDS
**§ 9.1** Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included the amount to be paid, less such discount, in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds, and amounts received from sales of surplus materials, and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be obtained.

**§ 9.2** Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 10    SUBCONTRACTS AND OTHER AGREEMENTS
**§ 10.1** Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or other appropriate agreements with the Contractor. The Owner may designate specific persons from whom, or entities from which, the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors, and from suppliers of materials or equipment fabricated especially for the Work, who are qualified to perform that portion of the Work in accordance with the requirements of the Contract Documents. The Contractor shall deliver such bids to the Architect and Owner with an indication as to which bids the Contractor intends to accept. The Owner then has the right to review the Contractor's list of proposed subcontractors and suppliers in consultation with the Architect and to object to any subcontractor or supplier. Any advice of the Architect, or approval or objection by the Owner, shall not relieve the Contractor of its responsibility to perform the Work in accordance with the Contract Documents. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

**§ 10.2** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement and shall not be awarded based on cost plus a fee without the Owner's prior written approval. If a subcontract is awarded based on a cost-plus a fee, the Contractor shall provide in the subcontract for the Owner to receive the same audit rights regarding the Subcontractor as the Owner receives with regard to the Contractor in Article 11.

**§ 10.3** The Contractor shall prepare, for the Architect's review and the Owner's acceptance, a procurement schedule for items that must be ordered well in advance of construction. The Contractor shall expedite and coordinate the

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                    (1648720211)

ordering and delivery of materials that must be ordered well in advance of construction. If the Owner agrees to procure any items prior to the Owner's approval of the Control Estimate, the Owner shall procure the items on terms and conditions acceptable to the Contractor. Upon the Owner's approval of the Control Estimate, the Owner shall assign all contracts for these items to the Contractor and the Contractor shall thereafter accept responsibility for them.

**§ 10.4** The Contractor, at its sole discretion, shall determine whether to accept assignment of subcontracts or purchase orders already executed for work on the Project with the Owner or any previous contractors. Contractor shall have no duty to defend, indemnify, or hold harmless Owner or Architect for any costs, including repairing or correcting damaged or nonconforming Work, incurred as result of the failure of the portions of the Work performed prior to the Date of Commencement, directly or indirectly, by any of Owner's assigned subcontracts or purchase orders. Owner shall defend, indemnify, and hold harmless Contractor for any costs, fees (including attorney's fees), or expenses, and including repairing or correcting damaged or nonconforming Work, incurred as result of the failure of the portions of the Work performed prior to the Date of Commencement, directly or indirectly, by any previous Contractor or Owner's assigned subcontracts or purchase orders.

## ARTICLE 11   ACCOUNTING RECORDS
The Contractor shall keep full and detailed records and accounts related to the Cost of the Work, and exercise such controls, as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Contractor's records and accounts, including complete documentation supporting accounting entries, books, job cost reports, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, Subcontractor's invoices, purchase orders, vouchers, memoranda, and other data relating to this Contract. The Contractor shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12   PAYMENTS
### § 12.1 Progress Payments
**§ 12.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor, and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum, to the Contractor, as provided below and elsewhere in the Contract Documents.

**§ 12.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**§ 12.1.3** Provided that an Application for Payment is received by the Architect not later than the «20th » day of a month, the Owner shall make payment of the amount certified to the Contractor not later than the «27th » day of the «same » month. If an Application for Payment is received by the Architect after the application date fixed above, payment of the amount certified shall be made by the Owner not later than «Seven » («7») days after the Architect receives the Application for Payment.

*(Federal, state or local laws may require payment within a certain period of time.)*

**§ 12.1.4** With each Application for Payment, the Contractor shall submit the cost control information required in Section 5.2.5 along with receipted invoices, or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that payments already made by the Contractor on account of the Cost of the Work equal or exceed progress payments already received by the Contractor plus payrolls for the period covered by the present Application for Payment, less that portion of the progress payments attributable to the Contractor's Fee.

**§ 12.1.5** Applications for Payment shall show the Cost of the Work actually incurred by the Contractor through the end of the period covered by the Application for Payment and for which the Contractor has made or intends to make actual payment prior to the next Application for Payment. In conformance with this provision, Contractor may request advance payment for deposits including shipping, VAT/Tax, and logistics costs required for the purchase of materials made by the Contractor directly from suppliers and Owner shall advance funds as may be required upon Contractor's submission of documentation reasonably necessary to establish such requirement and not exceeding an aggregate amount of $1,000,000 at any given time.

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                                (1648720211)

9

**§ 12.1.6** In accordance with AIA Document A201–2017 and subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

**§ 12.1.6.1** The amount of each progress payment shall first include:

    .1    The Cost of the Work as described in Article 7;

    .2    That portion of Construction Change Directives or reasonably justified Change Orders; and

    .3    The Contractor's Fee, and General Conditions computed upon the Cost of the Work described in the preceding Section 12.1.6.1.1 at the rate stated in Section 5.1.1;

    .4    Cost of Insurance should be paid in two installments:
         50% Upon Commencement of work
         50% upon 50% of completion of work, based on G702/G703 Requisition

**§ 12.1.6.2** The amount of each progress payment shall then be reduced by:

    .1    The aggregate of any amounts previously paid by the Owner.

    .2    The amount, if any, for Work that remains uncorrected and for which the Architect has previously withheld a Certificate for Payment as provided in Article 9 of AIA Document A201–2017.

    .3    Any amount for which the Contractor does not intend to pay a Subcontractor or material supplier, unless the Work has been performed by others the Contractor intends to pay.

    .4    For Work performed or defects discovered since the last payment application, unless such Work is directly or indirectly caused is a result of Work performed by a Contractor, subcontractor and/or the Owner prior to the Commencement Date, any amount for which the Owner may withhold payment, or nullify a Certificate of Payment in whole or in part, as provided in Article 9 of AIA Document A201–2017;

    .5    The shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

    .6    Retainage withheld pursuant to Section 12.1.7.

**§ 12.1.7 Retainage**

**§ 12.1.7.1** For each progress payment made prior to Substantial Completion of the Work, the Owner may withhold the following amount, as retainage, from the payment otherwise due:

«5%»

**§ 12.1.7.1.1** The following items are not subject to retainage:
*(Insert any items not subject to the withholding of retainage, such as general conditions, insurance, etc.)*

**« Contractor's General Conditions, Contractor's Insurance, Fees and GC/Owner Direct Purchases of Materials and Supplies, »**

**§ 12.1.7.2** Reduction or limitation of retainage, if any, shall be as follows:

**«5% retainage shall be held on each Subcontractors line item in the Control Estimate until each Subcontractor has completed 50% of its scope of work, at which point the retainage shall be reduced to 2.5% until completion of said scope of work.**
**With respect to the following trades that fully perform their scope of work within a short period of time from the Commencement Date, said subcontractors shall receive retainage due to them with thirty (30) days following completion of the work. These trades include but are not limited to: Demolition, Flooring, etc...»**

**§ 12.1.7.3** Except as set forth in this Section 12.1.7.3, upon Substantial Completion of the Work, the Contractor may submit an Application for Payment that includes the retainage withheld from prior Applications for Payment pursuant to this Section 12.1.7. The Application for Payment submitted at Substantial Completion shall not include retainage as follows:
*(Insert any other conditions for release of retainage, such as upon completion of the Owner's audit and reconciliation, upon Substantial Completion.)*

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                          (1648720211)

1. Common Areas/Elements Punch List:
   a. Upon Substantial Completion of the Common Areas and Common Elements, (as such areas and elements are defined in Owner's approved Condominium Offering Plan) authorized representatives of the Contractor and Owner shall together conduct an inspection of said areas and elements for the purpose determining the existence of any incomplete , non-conforming , or defective items of the Work and/or materials performed and/or installed under this Agreement ( the "corrective work"). Said parties shall prepare in duplicate original a written itemized list of all said items determined and mutually agreed to require completion, replacement or repair (the "Punch List"). Said Punch List shall state the agreed total dollar of said items listed, shall be signed by the parties and shall constitute the complete and final list of corrective work required to be performed by the Contractor pursuant to this section.

2. Residential Unit Punch List:
   a. With respect to individual condominium units, any such units not under written contract for sale as of the time of Substantial Completion, the same procedure provided for in (a) above shall apply with preparation of a separate punch list for each said unsold unit.
   b. With respect to individual condominium units under written contract for sale as of the time of issuance of a Temporary Certification of Occupancy(TCO) for such unit, authorized representatives of the Contractor, of the Owner , and the Unit Purchaser, shall jointly conduct an inspection of the unit, within a reasonable time following issuance of the TCO to determine the existence of any required corrective work as defined in subsection (a) above, and shall prepare and each shall sign an agreed punch list (in triplicate) in the form provided for in subsection (a) above.

3. Completion of Punch List Items: With respect to all punch lists referred to in subsections (1) and (2) above, Contractor shall complete all items agreed to in each punch list prepared within thirty (30) days from the date of execution of the punch list, provided however that in the event replacement of materials are required to be provided with respect to any Punch List item said period of time shall be reasonably extended to provide for order and delivery of such replacement(s).

4. In the event any Punch List items are not completed by Contractor within the time provided for in subsection (3) above, Owner shall have the right , upon ten (10) business days written notice to Contractor, to engage others to complete said item(s) and to charge the retained fund provided for herein below for the amount charged to Owner by such third party(ies) engaged to complete said item(s).

5. Punch List Retainage:
   a. With respect to each Punch List prepared in accordance with this provision, it is agreed that an amount equal to 150% of the total Punch List dollar value provided for shall be retained by Owner from Final Payment otherwise due to Contractor under this agreement pending completion of the punch list items.

6. It is understood and agreed that the Punch List provisions are distinct from any warranty obligations of the Contractor otherwise provided for in this Agreement which shall remain in full force and effect. »

§ **12.1.8** If final completion of the Work is materially delayed through no fault of the Contractor, then the Owner shall pay the Contractor any additional amounts in accordance with Article 9 of AIA Document A201–2017.

§ **12.1.9** Except with the Owner's prior written approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and suitably stored at the site.

§ **12.1.10** The Contractor shall require Subcontractors to be bound by and subject to the retainage provision by the Contractor as is consistent with the terms for retainage set forth herein.

§ **12.1.11** In taking action on the Contractor's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor, and such action shall not be deemed to be a representation that (1) the Architect has made a detailed examination, audit, or arithmetic verification, of the documentation submitted in accordance with Section 12.1.4 or other supporting data; (2) that the Architect has made exhaustive or continuous on-site inspections; or (3) that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits, and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                                    (1648720211)

### § 12.2 Final Payment
§ 12.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

    .1    the Contractor has fully performed the Contract, except for the Contractor's responsibility to correct Work, as provided in Article 12 of AIA Document A201–2017, and to satisfy other requirements, if any, which extend beyond final payment.

    .2    the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

    .3    a final Certificate for Payment has been issued by the Architect in accordance with Section 12.2.2.

§ 12.2.2 Within 30 days of the Owner's receipt of the Contractor's final accounting for the Cost of the Work, the Owner, at Owner's discretion, shall conduct an audit of the Cost of the Work. If no notice to conduct an audit has been issued after thirty (30) days of Owner's receipt of the Contractor's final accounting, the final accounting shall be deemed approved by all Parties.

§ 12.2.2.1 If the Owner conducts an audit of the Cost of the Work, the Owner shall, within 10 days after completion of the audit, submit a written report based upon the auditor's findings to the Contractor.

§ 12.2.2.2 Within seven days after receipt of the written report described in Section 12.2.2.1, or receipt of notice that the Owner will not conduct an audit, or the waiver thereof, and provided that the other conditions of Section 12.2.1 have been met, the Architect will either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Article 9 of AIA Document A201–2017. The time periods stated in this Section 12.2.2 supersede those stated in Article 9 of AIA Document A201–2017. The Architect is not responsible for verifying the accuracy of the Contractor's final accounting.

§ 12.2.2.3 If the Owner's auditors report concludes that the Cost of the Work, as substantiated by the Contractor's final accounting, is less than claimed by the Contractor, the Contractor shall be entitled to request Arbitration of the disputed amount without seeking an initial decision pursuant to Article 15 of AIA Document A201–2017.

§ 12.2.3 The Owner's final payment to the Contractor shall be made no later than thirty (30) days after the issuance of the  final Certificate for Payment by Contractor.

« »

§ 12.2.4 If, subsequent to final payment, and at the Owner's request, the Contractor incurs costs, described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor for such costs, and the Contractor's Fee applicable thereto, on the same basis as if such costs had been incurred prior to final payment.

### § 12.3 Interest
Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

« 9 » %

## ARTICLE 13    DISPUTE RESOLUTION
### § 13.1 Initial Decision Maker
The Architect will serve as Initial Decision Maker pursuant to Article 15 of AIA Document A201–2017 unless the parties appoint below another individual, not a party to the Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

« N/A »

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
User Notes:    (1648720211)

### § 13.2 Binding Dispute Resolution
For any Claim subject to, but not resolved by, Arbitration pursuant to Article 15 of AIA Document A201–2017, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box.)*

[ « » ]    Arbitration pursuant to Section 15 of AIA Document A201–2017

[ « X » ] Litigation in a court of competent jurisdiction, whereby all Parties have right to a trial by jury

[ « » ]    Other *(Specify)*

« »

If the Owner and Contractor do not select a method of binding dispute resolution, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.

## ARTICLE 14    TERMINATION OR SUSPENSION
### § 14.1 Termination
§ 14.1.1 The Contract may be terminated by the Owner, or the Contractor as provided in Article 14 of AIA Document A201–2017.

### § 14.1.2 Termination by the Owner for Cause
§ 14.1.2.1 If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201–2017, the Owner shall then only pay the Contractor an amount calculated as follows:
- .1    Take the Cost of the Work including all Contractor markups incurred by the Contractor to the date of termination.
- .2    Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion;
- .3    Subtract the aggregate of previous payments made by the Owner; and
- .4    Subtract the costs and damages incurred by the Owner under Article 14 of AIA Document A201–2017.

§ 14.1.2.2 The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.1.2.1.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

### § 14.1.3 Termination by the Owner for Convenience
If the Owner terminates the Contract for convenience in accordance with Article 14 of AIA Document A201–2017, then the Owner shall pay the Contractor a termination fee as follows:
*(Insert the amount of or method for determining the fee, if any, payable to the Contractor following a termination for the Owner's convenience.)*

«All lost profit including markups as stated in latest Control Estimate Budget »

### § 14.2 Suspension
The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2017; in such case, the Contract Sum and Contract Time shall be increased as provided in Article 14 of AIA Document A201–2017, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Article 5 and Section 6.4 of this Agreement.

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                      (1648720211)

## ARTICLE 15    MISCELLANEOUS PROVISIONS

§ **15.1** Where reference is made in this Agreement to a provision of AIA Document A201–2017 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ **15.2** The Owner's representative:
*(Name, address, email address and other information)*

**Shaya Brodchandel**
**shayabrod@gmail.com**
**Madison 33 owner LLC**
**172 Madison Ave, Unit 27A New York, NY 10016**

§ **15.3** The Contractor's representative:
*(Name, address, email address and other information)*

« Joseph Klaynberg,
 jklaynberg@wwccorp.com »

§ **15.4** Neither the Owner's nor the Contractor's representative shall be changed without ten days' prior notice to the other party.

§ **15.5 Insurance.**
§ **15.5.1** The Owner and the Contractor shall purchase and maintain insurance.
§ **15.6** Notice in electronic format, pursuant to Article 1 of AIA Document A201–2017, may be given in accordance with AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, if completed, or otherwise as set forth below:
*(If other than in accordance with AIA Document E203–2013, insert requirements for delivering notice in electronic format such as name, title, and email address of the recipient and whether and how the system will be required to generate a read receipt for the transmission.)*

« »

§ **15.7** Other provisions:

§ **15.7.1** Contractor shall comply with the safety and insurance requirements set forth in the license agreements executed between Owner and Adjacent Property owners provided such requirements are provided to Contractor prior to the Commencement of Work. All communication with Adjacent Property owners to be conducted by Owner.

§ **15.7.2** Intentionally deleted.

§ **15.7.3** Contractor shall not be responsible for any costs associated with providing a **site safety manager** for the Project, site safety plans, drawings, and/or personnel, Security or Fire Guards at the Project site, Site surveys, gridlines, axis lines, benchmarks and/or any architectural surveys.

§ **15.7.4** Contractor shall not be responsible for any costs, expenses, fees (including attorneys), and/or bonding of any Mechanic's Lien(s) filed against the Property.

§ **15.7.5** To the fullest extent permitted by applicable law, Owner shall indemnify and hold Contractor and its employees, agents, successors, and assigns (each a "Covered Person") from and against any and all losses, claims, demands, liabilities, expenses, judgements, fines, settlements and other amounts arising from any and all claims, demands, actions, suits, proceedings, civil, criminal, administrative or investigative in which the Covered Person may be involved, or threatened to be involved; as a party or otherwise (including, without limitation, subpoenas and/or information requests), relating to or arising from the Adjacent Property or out of any Work performed, act, or omission of any contractor(s) and/or subcontractor(s), directly or indirectly, involved with the Project prior to the Commencement Date. This indemnification shall survive termination of this Agreement and shall be construed and understood to offer Contractor blanket protection from any construction defects directly or indirectly relating to Work in place prior to the Commencement Date.

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
User Notes:                                                                                            (1648720211)

## ARTICLE 16    ENUMERATION OF CONTRACT DOCUMENTS

**§ 16.1** This Agreement is comprised of the following documents:

.1    AIA Document A103™–2017, Standard Form of Agreement Between Owner and Contractor
.

.2    AIA Document A201™–2017, General Conditions of the Contract for Construction (Incorporated by reference)

.3    Exhibit A. Schedule of Values

.4    Exhibit B. Insurance

.5    Exhibit C. RIDER TO AIA DOCUMENT A103-2017

This Agreement entered as of the day and year first written above

**OWNER** *(Signature)*

Madison 33 Owner, LLC
172 Madison Ave, Unit 27A New York, NY 10016
Yitzchak Tessler, Managing Member

**CONTRACTOR** *(Signature)*

Spectra Construction and Development, LLC
554 5th Ave, 5th Floor, New York, NY 10036
Daniel Klaynberg, President

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
User Notes:                                                                                                   (1648720211)

## Exhibit "A": Schedule of Values

Project: 172 Madison PH
172 Madison Avenue
New York, NY

### Schedule of Values

| TRADE | 28th Floor | 29th Floor | 30th Floor | 31st Floor | Skyhouse (Budget only) | TOTAL |
|---|---|---|---|---|---|---|
| GENERAL REQUIREMENTS | $ 25,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 25,500 | $ 95,500 |
| WOOD, PLASTICS & COMPOSITES | $ 534,130 | $ 608,207 | $ 498,530 | $ 498,530 | $ 697,942 | $ 2,837,339 |
| THERMAL & MOISTURE PROTECTIO | $ 91,350 | $ 60,848 | $ 49,875 | $ 49,875 | $ 69,825 | $ 321,773 |
| OPENINGS | $ 47,840 | $ 58,365 | $ 47,840 | $ 47,840 | $ 66,976 | $ 268,861 |
| FINISHES | $ 485,770 | $ 591,828 | $ 485,105 | $ 485,105 | $ 679,147 | $ 2,726,955 |
| SPECIALTIES | $ 33,150 | $ 40,443 | $ 33,150 | $ 33,150 | $ 46,410 | $ 186,303 |
| APPLIANCES | $ 44,000 | $ 56,120 | $ 46,000 | $ 46,000 | $ 64,400 | $ 256,520 |
| FIRE SUPPRESSION | $ 42,000 | $ 51,240 | $ 42,000 | $ 42,000 | $ 58,800 | $ 236,040 |
| PLUMBING | $ 286,500 | $ 336,110 | $ 275,500 | $ 275,500 | $ 385,700 | $ 1,559,310 |
| MECHANICAL | $ 190,000 | $ 231,800 | $ 190,000 | $ 190,000 | $ 266,000 | $ 1,067,800 |
| ELECTRICAL | $ 339,700 | $ 414,434 | $ 339,700 | $ 339,700 | $ 475,580 | $ 1,909,114 |
| ELEVATOR ( ALLOWANCE) | $ - | $ - | $ - | $ - | $ 180,000 | |
| ELECTRONIC SAFETY & SECURITY | Included | Included | Included | Included | Included | Included |
| | | | | | $ - | |
| SUBTOTAL | $ 2,119,440 | $ 2,022,700 | $ 2,022,700 | $ 2,022,700 | $ 3,016,280 | $ 11,203,820 |
| GENERAL CONDITIONS | $ 211,944 | $ 202,270 | $ 202,270 | $ 202,270 | $ 301,628 | $ 1,120,382 |
| | | | | | | |
| SUBTOTAL | $ 2,331,384 | $ 2,224,970 | $ 2,224,970 | $ 2,224,970 | $ 3,317,908 | $ 12,324,202 |
| FEE | $ 116,569 | $ 111,249 | $ 111,249 | $ 111,249 | $ 165,895 | $ 616,210 |
| | | | | | | |
| SUBTOTAL | $ 2,447,953 | $ 2,336,219 | $ 2,336,219 | $ 2,336,219 | $ 3,483,803 | $ 12,940,412 |
| INSURANCE | $ 110,158 | $ 105,130 | $ 105,130 | $ 105,130 | $ 156,793 | $ 582,341 |
| | | | | | | |
| SUBTOTAL | $ 2,558,111 | $ 2,441,348 | $ 2,441,348 | $ 2,441,348 | $ 3,640,597 | $ 13,522,753 |
| CONTINGENCY | TBD | TBD | TBD | TBD | TBD | TBD |
| | | | | | | |
| TOTAL | $2,558,111 | $2,441,348 | $2,441,348 | $2,441,348 | $3,640,597 | $13,522,753 |

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
User Notes:                                                                                      (1648720211)

## Exhibit "B": Insurance

**ACORD®**

## CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
09/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Anthony Chien | | |
|---|---|---|---|
| Hiram Cohen & Son | PHONE (A/C, No, Ext): (516) 742-7180 | | FAX (A/C, No): (516) 742-7209 |
| 486 Willis Avenue | E-MAIL ADDRESS: achien@hilbgroup.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Williston Park          NY  11596 | INSURER A : Peleus Insurance Company | | 34118 |
| INSURED | INSURER B : Mt. Hawley Insurance Company | | 37974 |
| Spectra Construction & Development Corp | INSURER C : State Insurance Fund WC Fund (NY) | | 36102 |
| 554 Fifth Ave, 5th Floor | INSURER D : ShelterPoint Life Insurance Co | | 81434 |
| | INSURER E : | | |
| New York          NY  10036 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: 24-25 Liab | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ☒ COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE ☒ OCCUR | Y | | 600 GL 0214368-00 | 08/08/2024 | 08/08/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☒ POLICY ☐ PRO-JECT ☐ LOC OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY ☐ ANY AUTO ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | ☒ UMBRELLA LIAB ☒ OCCUR ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | MXL0438170 | 08/08/2024 | 08/08/2025 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N N/A | | M25838202 | 01/19/2024 | 01/19/2025 | ☒ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| D | NYS Disability | | | D683983 | 01/19/2024 | 01/19/2025 | | Statutory Limit |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Madison 33 Owner ,LLC C/O Yitzchak Tessler 172 Madison Ave, Unit 27A New York, NY 10016 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

AIA Document A103™ – 2017. Copyright © 2001, 2007 and 2017 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
User Notes:          (1648720211)

**17**

## Exhibit "C": Rider

**RIDER TO AIA DOCUMENT A103-2017 MADISON 33 OWNER LLC (Debtor-in-Possession) AND SPECTRA CONSTRUCTION AND DEVELOPMENT CORP.**

This Rider shall constitute additional terms to the Owner/Contractor agreement (the "Agreement") entered into between the above referenced parties. The terms and conditions of this Rider shall supplement, revise or amend such Agreement, including the AIA-A201-2017 General Conditions, as applicable, and, in the event of a conflict between the terms and conditions of the Agreement and this Rider, the terms and conditions of this Rider shall prevail. All terms of this Rider reference existing numerical Articles and clauses of the Agreement, except, if a new clause or article is contained herein, same has been identified and inserted into the applicable numerical article in the designated provisions of the Agreement.



1.  **Article 4 – Section 4.1** – General Contractor shall diligently work to obtain the DOB permit immediately after execution of this Agreement. Should General Contractor fail to do so, and delay securing the permit within a commercially reasonable time, General Contractor shall not be entitled to an extension of time to complete the contract work, within the period required under Section 4.3.1, and Owner retains the right to pursue any remedies under the Agreement.

2.  **Article 5 – Section 5.1** – The "Contract Sum" is a lump sum amount payable to the General Contractor which includes the General Contractor's "Fee" under Section 5.1.1. Exhibit A calculates the Contractor's Fee under Section 5.1.1 as reflected on the exhibit. The Exhibit A schedule of values if solely for payment purposes only as a means to estimate values for ongoing and partial requisitioning procedures as delineated in the AIA A201 and Agreement. Such Schedule of Values therefore does not constitute a unit price or fixed value for any of the designated scopes of work nor for purposes of valuation of change orders or credits if any.

3.  **Article 5 – Section 5.1.2** – There will be no changes in the work except for additional scope of work directives from the Owner and unforeseen conditions. Specifically, General Contractor acknowledges that the designated contractual Scope of Work is explicit and unambiguous, and that all inferable and reasonable work required to achieve the resulting operation or completion of such work is unambiguous. General Contractor further confirms they have inspected the work site and confirm that, upon reasonable inspection, there are no impediments to completing the scope of work or lack of detail or ambiguities in the contractual scope of work. General Contractor does not represent that they have conducted a design analysis or review of any licensed design professional's work product.

4.  **Article 5 – Section 5.1.4** – So there is no dispute regarding substantial completion of the work within the time period designated in Section 4.3.1, upon General Contractor's securing of the DOB project permit (not trade permits), General Contractor shall, within five (5) business days of securing the permit, send a written notice to the Owner forwarding the permit and confirming the project "Date of Commencement." Should Owner disagree or dispute such "Date of Commencement," Owner shall, within five (5) business days thereafter, send a written notice to the General Contractor stating grounds for the disagreement.

5.  **Article 5 – Sections 5.2-5.2.4** – Delete. There is no control Estimate as the contract is a lump sum price.

6.  **Article 7** – Delete in its Entirety.

7.  **Article 8** – Delete in its Entirety.

8.  **Article 12 – Section 12.1.3** – Delete and replaced as follows:
12.1.3-Provided that an Application for Payment is received by the Architect not later than the 30th day of a month, the Owner shall make payment of the amount certified to the contractor (after

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is not for resale.
**User Notes:**                                                                                          (1648720211)

review and approval, modification or rejection by Owner and Architect) not later than the 30th day of the next month. If an application for Payment is received by the Architect after the application date fixed above, payment of the amount certified shall be made by the Owner not later than 30 days after the Architect received the Application for Payment.

9.   **Article 12 – Section 12.1.6.1.4** – Delete and replaced as follows:

12.1.6.1.4 – Cost of Insurance shall be paid as follows: 50 % of the total reflected on the Schedule of Values with each of the first four (4) requisition/progress payments and the remainder due over the next eight (8) requisition progress payments.

10.   **Article 12 – Section 12.1.7.1.1** – Delete and replaced as follows; "Contractor's General Conditions, Insurance and GC/Owner Direct Purchases of Materials and supplies."

11.   **Article 12 – Section 12.1.7.2** – Delete in its entirety and replace with "N/A."

12.   **Article 12 – Section 12.1.7.3(5)** – Change "150%" to "200%."

13.   **Article 14 – Section 14.1.3** – Delete "All lost profit including markups as stated in the latest control Estimate."

14.   **Article 15 – Section 15.7.3** – Delete the word "not" and confirms that the designated responsibilities listed are within the lump sum price of the General contractor.

15.   **Article 15 –Section 15.7.4** – Add sentence at the end: "However, in the event General Contractor fails to remit trust fund payments to third parties subcontractors, vendors, materialmen or equipment rentals, General contractor shall be responsible to bond such liens.

16.   **Article 15-Section 15.7.5**-Add" To be clear, this provision applies solely to adjacent property issues and work of previous contractors or subcontractors."

17.   **Article 16-Section 16.1.5**-New: The Rider to Agreement.

### END OF RIDER

Dated: September _, 2024

Owner

_____
**MADISON 33 OWNER LLC**

General Contractor

_____
**Spectra Construction and Development, LLC**
**554 5th Ave, 5th Floor, New York, NY 10036**
**Daniel Klaynberg, President**

**AIA Document A103™ – 2017.** Copyright © 2001, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA®
Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document,
or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the
law. This draft was produced by AIA software at 09:39:07 ET on 02/07/2019 under Order No.3710874800 which expires on 02/07/2020, and is
not for resale.
**User Notes:**                                                                                              (1648720211)