**<u>Exhibit E</u>**

Proposed DIP Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                          Chapter 11

MADISON 33 OWNER, LLC,                              Case No.:  1:24-bk-11463 (PB)

                                    Debtor.
-------------------------------------------------------------x

### ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING ON A SENIOR PRIORITY BASIS, (II) GRANTING PRIMING LIENS PURSUANT TO SECTION 364(d) OF THE BANKRUPTCY CODE AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTION 364(c)(1) OF THE BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion"),[1] of Madison 33 Owner, LLC, as debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(2), 362(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), seeking entry of an order (this "DIP Priming Order") among other things: (1) authorizing the Debtor to obtain post-petition financing ("DIP Priming Financing") on a senior priority basis pursuant to priming senior secured debtor-in-possession term loan in accordance with and subject to the terms and conditions set forth in that certain DIP Commitment Letter attached hereto as **Exhibit A** (as amended, supplemented, or otherwise modified from time to time, the "DIP Commitment Letter"), by and among the Debtor and Castellan Capital LLC or its affiliate as lender (the "DIP Lender"), in the aggregate principal amount not to exceed $22,000,000 (the

---

[1]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the DIP Commitment Letter, as applicable.

"DIP Priming Loan"), which shall be made available to the Debtor in accordance with and subject to the terms of the DIP Commitment Letter and the Budget upon the date of entry of this DIP Priming Order; (2) authorizing the Debtor to execute, deliver, and perform under the DIP Commitment Letter and all other loan documentation related to the DIP Priming Loan (collectively, with the DIP Commitment Letter and this DIP Priming Order, the "DIP Priming Documents"); (3) authorizing the Debtor to incur obligations with respect to loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees, costs, expenses, and other liabilities, all other obligations due and payable under the DIP Priming Documents (collectively, the "DIP Obligations"); (4) granting to the DIP Lender both a senior priming mortgage covering the DIP Collateral (as defined below) set forth herein, plus an allowed super-priority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations; (5) granting to the DIP Lender valid, enforceable, non-avoidable, and automatically perfected priming liens pursuant to section 364(d) of the Bankruptcy Code on the DIP Collateral (as defined below) and all proceeds thereof; (6) authorizing the Debtor to use proceeds of the DIP Priming Loan solely in accordance with and subject to this DIP Priming Order, the Budget, and the DIP Priming Documents; (7) authorizing the Debtor to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Priming Documents as such become earned, due, and payable to the extent provided in, and in accordance with, and subject to, the DIP Priming Documents; (8) modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor to effectuate the terms and provisions of this DIP Priming Order and the DIP Priming Documents; and (9) granting related relief.

The Bankruptcy Court having considered the final relief requested in the Motion, the exhibits attached thereto, including the *Declaration of David Goldwasser in Support of Debtor's Motion*

*(I) Authorizing the Debtor to Obtain Post-Petition Senior Priming Financing, (II) Granting Priming Liens Pursuant to Section 364(d) of the Bankruptcy Code and Providing Superpriority Administrative Expense Status Pursuant to Section 364(c)(1) of the Bankruptcy Code, and (III) Granting Related Relief* attached to the Motion as **Exhibit F**, the available DIP Priming Documents, and the evidence submitted and arguments made at the hearing held on February __, 2025 (the "Hearing"); and the Hearing having been held and concluded; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved, or overruled by the Bankruptcy Court; and it appearing that approval of the final relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate, otherwise is fair and reasonable and in the best interests of the Debtor and its estate, and is essential for the continued operation of the Debtor and the preservation of the value of the Debtor's assets; and it appearing that the Debtor's entry into the DIP Priming Documents is a sound and prudent exercise of the Debtor's business judgment and provides sufficient adequate protection to the existing lender, Palm Avenue Hialeah Trust, a Delaware statutory trust (the "Prepetition Lender"); and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

---

[2] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.     <u>Petition Date</u>. On August 26, 2024 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>").

B.     <u>Debtor In Possession</u>. Since the Petition Date, the Debtor has remained in possession of its assets and is a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, or examiner has been heretofore appointed in the Chapter 11 Case.

C.     <u>Jurisdiction and Venue</u>. This Bankruptcy Court has core jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Bankruptcy Court may enter a DIP Priming Order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Case and proceedings on the Motion is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Rules 2002-1, 4001-2, and 9014-2. The Debtor and the DIP Lender consent to the entry of this DIP Priming Order to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter the DIP Priming Order or judgments in connection with the Motion consistent with Article III of the United States Constitution.

D.     <u>Notice</u>. The Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Under the circumstances, the notice given by the Debtor of the Motion, the relief

requested therein, and of the Hearing, complies with Bankruptcy Rules 2002, 4001(b), and (c) and 9014 and Local Bankruptcy Rules 4001-2 and 9013-1.

      E.    <u>Findings Regarding the DIP Priming Financing</u>.

      (i)    Good and sufficient cause has been shown for the entry of this DIP Priming Order and for authorization of the Debtor to obtain senior priming financing pursuant to the DIP Priming Documents.

      (ii)    The Debtor has an immediate and critical need to obtain the DIP Priming Financing in order to permit, among other things, the Debtor to make capital expenditures and to satisfy other working capital and operational needs to complete the project and to fund expenses of the Chapter 11 Case in accordance with and subject to the Budget. The access of the Debtor to sufficient working capital and liquidity through the use of DIP Collateral and the incurrence of new indebtedness under the DIP Priming Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtor and to a successful reorganization of the Debtor.

      (iii)    Based on the Motion and the record presented to the Bankruptcy Court at the Hearing, the Debtor made significant attempts to find financing on better terms, and the DIP Priming Financing represents the best terms and pricing for such financing, and the Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Priming Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting to the DIP Lender the DIP Priming Liens and the DIP

5

Superpriority Claims (as defined herein), under the terms and conditions set forth in this DIP Priming Order and in the DIP Priming Documents.

(iv)    Based on the Motion and the record presented to the Bankruptcy Court at the Hearing, the terms of the DIP Priming Financing pursuant to this DIP Priming Order and the DIP Priming Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(v)    The DIP Priming Financing has been negotiated in good faith and at arm's length between the Debtor and the DIP Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with, the DIP Priming Financing and the DIP Priming Documents, including, without limitation, all loans made to the Debtor pursuant to the DIP Priming Documents and any DIP Obligations shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and its successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Priming Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(vi)    The Debtor has prepared and delivered to the DIP Lender the Budget attached hereto as **Exhibit A**. The Budget reflects, among other things, the Debtor's anticipated disbursements for each calendar week, and is in form and substance satisfactory to the DIP Lender. The Budget may be modified, amended, and updated from time to time in accordance with the DIP Priming Documents, and once approved by the DIP Lender, shall supplement and replace the Budget (the initial Budget and each subsequent approved budget, shall constitute without

6

duplication, the "Budget"). The Debtor believes that the Budget is reasonable under the facts and circumstances. The DIP Lender is relying, in part, upon the Debtor's agreement to comply with the Budget, the other DIP Priming Documents, and this DIP Priming Order in determining to enter into the post-petition financing arrangements provided for in this DIP Priming Order.

F.    Immediate Entry. Sufficient cause exists for immediate entry of this DIP Priming Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). Absent granting the relief set forth in this DIP Priming Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the DIP Priming Financing and the use of DIP Collateral, in accordance with this DIP Priming Order and the DIP Priming Documents are therefore in the best interests of the Debtor's estate and consistent with the Debtor's exercise of its fiduciary duties.

Based upon the foregoing findings and conclusions, the Motion and the record before the Bankruptcy Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    Motion Granted. The final relief sought in the Motion is granted, and the financing described herein is authorized and approved on a senior secured basis priming all existing liens and encumbrances pursuant to 11 U.S.C. §364(d), in each case to the extent set forth in this DIP Priming Order and in accordance with and subject to the terms and conditions set forth herein and to the extent not inconsistent with this DIP Priming Order. All objections to this DIP Priming Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled on the merits.

2.    <u>Authorization of the DIP Priming Financing and the DIP Priming Documents</u>.

(a)    The Debtor is hereby authorized to execute, deliver, enter into and, as applicable, perform all of its obligations under the DIP Priming Documents and such other and further acts as may be necessary, appropriate, or desirable in connection therewith. The Debtor is hereby authorized to borrow money pursuant to the DIP Priming Documents.

(b)    In furtherance of the foregoing and without further approval of this Bankruptcy Court, the Debtor is authorized to perform all acts, to make, execute, and deliver all instruments, certificates, agreements, charges, deeds, and documents and to pay all fees, expenses, and indemnities in connection with or that may be reasonably required, necessary, desirable or requested by the DIP Lender for the Debtor's performance of its obligations under or related to the DIP Priming Financing, including, without limitation: (i) the execution and delivery of, and performance under, each of the DIP Priming Documents; (ii) the execution and delivery of, and performance under, one or more amendments, waivers, consents, or other modifications to and under the DIP Priming Documents, in each case, in such form as the Debtor and the DIP Lender may agree, it being understood that no further approval of this Bankruptcy Court shall be required for any authorizations, amendments, waivers, consents, or other modifications to and under the DIP Priming Documents (and any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder. Updates and supplements to the Budget required to be delivered by the Debtor under the DIP Priming Documents shall not be considered amendments or modifications to the Budget or the DIP Priming Documents and no further approval of this Bankruptcy Court shall be required

8

therefor; (iii) the non-refundable payments to the DIP Lender of all fees, including professional

fees referred to in the DIP Priming Documents (or in any separate letter agreements, including,

without limitation, any fee letters between the Debtor and the DIP Lender) in connection with the

DIP Priming Financing (collectively, the "DIP Fees and Expenses") not to exceed $_____,

without the need to file retention motions or fee applications; and (iv) the performance of all other

acts required under or in connection with the DIP Priming Documents, including the granting of

the DIP Priming Liens and the DIP Superpriority Claims and perfection of the DIP Priming Liens

and DIP Superpriority Claims as permitted herein and therein, and to perform such other and

further acts as may be necessary, desirable, appropriate or requested by the DIP Lender in

connection therewith, in each case in accordance with and subject to the terms of the DIP Priming

Documents.

(c)     All the terms and provisions of the DIP Commitment Letter are hereby

incorporated herein and approved.

3.     DIP Obligations. Upon execution and delivery of the DIP Priming Documents, the

DIP Priming Documents shall constitute legal, valid, binding and non-avoidable obligations of

the Debtor enforceable against the Debtor and its estate in accordance with and subject to the

terms of the DIP Priming Documents and this DIP Priming Order, and any successor thereto,

including any trustee appointed in the Chapter 11 Case, or in any case under Chapter 7 of the

Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings

superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon

execution and delivery of the DIP Priming Documents, the DIP Obligations will include all loans

and any other indebtedness or obligations, contingent or absolute, which may now or from time

to time be owing by the Debtor to the DIP Lender under, or secured by, the DIP Priming

9

Documents or this DIP Priming Order, including all principal, interest, costs, fees, expenses, indemnities, and other amounts under the DIP Priming Documents (including this DIP Priming Order). Except as permitted hereby, no obligation, payment, transfer, or grant of security hereunder or under the DIP Priming Documents to the DIP Lender (including their Representatives) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.    DIP Superpriority Claims. In addition to the priming liens under 11 U.S.C. §364(d), all of the DIP Obligations shall constitute allowed super-priority administrative expense claims against the Debtor (without the need to file any proof of claim) pursuant to section 364(c)(1) of the Bankruptcy Code, with priority over any and all claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "DIP Superpriority Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed

10

under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof including any proceeds or property recovered, unencumbered or otherwise, from any avoidance actions, whether by judgment, settlement or otherwise (the "Avoidance Proceeds") in accordance with the DIP Priming Documents and this DIP Priming Order; provided that the DIP Superpriority Claims shall not be subject to surcharge pursuant to section 506(c) of the Bankruptcy Code or otherwise. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Priming Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5.    DIP Priming Liens.    As security for the DIP Obligations, effective and automatically and properly perfected upon the date of this DIP Priming Order without the necessity of obtaining a signed subordination from the Prepetition Lender or the execution, recordation or filing by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP Lender of, or over, any DIP Collateral, the following valid, binding, continuing, enforceable and non-avoidable senior security interests and liens with priority over all existing liens and mortgages (all security interests and liens granted to the DIP Lender pursuant to this DIP Priming Order and the DIP Priming Documents, the "DIP Priming Liens") are hereby granted to the DIP Lender pursuant to Section 364(d) of the Bankruptcy Code to provide a valid, binding, continuing, enforceable, fully perfected first (not including Chapter 5 causes of action) priority and priming senior security interest in and lien upon the DIP Collateral (as defined in the DIP Commitment Letter); and (ii) pursuant to section 364(d)(1) of the Bankruptcy Code, a valid,

11

binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien (the "DIP Priming Liens") upon: (i) units PHA, PHB, PHC, PHD, PH Sky, CV-A and CV-B at the Property, together with all related rights (the "DIP Collateral"); (ii) assignment and security interest in all current and future leases relating to the DIP Collateral; (iii) assignment of all plans, contracts, approvals, licenses, and permits; (iv) UCC liens on all personal property, equipment and fixtures in the DIP Collateral; and (v) Completion Guarantee for C of O and Condo Book, including that portion of such assets and property already secured by a first priority lien (the "Prepetition Collateral") under the various prepetition loan documents (the "Prepetition Loan Documents") among Deutsche Bank, AG (together with its successors and assigns, including the Prepetition Lender, the Debtor and Madison 33 Partners, LLC, (clauses (i) and (ii), collectively, the "DIP Collateral"), which DIP Priming Liens shall prime in all respects the interests of the Prepetition Lender arising from the current and any replacement liens of the Prepetition Lender.

6.    Protection of DIP Lender's Rights.

(a)    So long as there are any DIP Obligations outstanding or the DIP Lender has any outstanding DIP Commitments under the DIP Priming Documents, the Prepetition Lender shall be subordinate to the DIP Lender and shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Loan Documents, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, the DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent the transfer, disposition, sale, or release is authorized under the DIP Priming Documents; (iii) not file any mortgages, notices of lien, or similar instruments, or

otherwise take any action to perfect their security interests in the DIP Collateral other than as necessary to give effect to this DIP Priming Order other than, (x) solely as to this clause (iii), the DIP Lender filing financing statements or other documents to perfect the liens granted pursuant to this DIP Priming Order, or (y) as may be required by applicable state law or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the Debtor's cost and expense, any termination statements, releases, and/or assignments in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any ordinary course sale or court-approved disposition.

(b)    To the extent any prepetition lender, including the Prepetition Lender, has possession of any DIP Collateral or has control with respect to any DIP Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such prepetition lender shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Lender.

(c)    Any proceeds of DIP Collateral subject to the DIP Priming Liens received by any prepetition lender, including the Prepetition Lender, whether in connection with the exercise of any right or remedy (including setoff) relating to the DIP Collateral or otherwise received by any prepetition lender, including the Prepetition Lender, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Lender in the same form as received, with any necessary endorsements. The DIP Lender is hereby authorized to make any such

endorsements as agent for any such prepetition lender, including the Prepetition Lender. This authorization is coupled with an interest and is irrevocable.

(d)    The automatic stay is hereby modified to the extent necessary to permit the DIP Lender to take any or all of the following actions, at the same or different time, in each case without further order or application of the Bankruptcy Court: (i) to file as necessary a DIP priming mortgage covering the DIP Collateral immediately upon the occurrence of an Event of Default set forth in the DIP Priming Documents, declare (A) the termination, reduction or restriction of any applicable further DIP Commitment to the extent any such DIP Commitment remains, (B) all applicable DIP Obligations to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP Lender, notwithstanding anything herein or in any DIP Document to the contrary, and (C) the termination of the applicable DIP Priming Documents as to any future liability or obligation of the DIP Lender with respect to the DIP Priming Financing (but, for the avoidance of doubt, without affecting any of the DIP Priming Liens or the DIP Obligations), and (ii) upon the occurrence and continuance of an Event of Default and the giving of ten (10) business days' prior written notice (the "Remedies Notice Period") via email to counsel to the Debtor, any official creditors' committee, the U.S. Trustee, counsel to the Prepetition Lender and counsel to the DIP Lender, which notice shall also be filed on the docket of the Bankruptcy Court, unless this Bankruptcy Court orders otherwise during the Remedies Notice Period after a hearing, (A) exercise all rights and remedies available under the DIP priming mortgage and the applicable DIP Priming Documents and otherwise available under applicable law whether or not the maturity of any of the DIP Obligations shall have been accelerated, and (B) withdraw consent to the Debtor's continued use of the DIP Priming Financing.

14

(e)       During the Remedies Notice Period, the Debtor shall be permitted to cure any Event of Default solely to: (i) pay critical administrative expenses strictly in accordance with the DIP Budget (without variance) or as otherwise agreed by the DIP Lender, and (ii) seek a hearing before the Bankruptcy Court. During the Remedies Notice Period, the Debtor, any official creditors' committee and/or any party in interest shall be entitled to seek an emergency hearing with the Bankruptcy Court within the Remedies Notice Period solely for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing. Except as set forth in this DIP Priming Order, the Debtor shall waive its right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Lender set forth in this DIP Priming Order or the DIP Priming Documents.

(f)       If the Event of Default is not cured during the Remedies Notice Period, the DIP Lender shall be entitled to seek an emergency hearing with the Bankruptcy Court to determine whether the DIP Lender shall be granted relief from the automatic stay to foreclose on its liens or take any other action available to the DIP Lender under the DIP Priming Documents, this DIP Priming Order and applicable law. At any such hearing the Debtor may only contest the DIP Lender's declaration of the Event of Default and may not assert any other or additional defenses.

7.       <u>Limitation on Charging Expenses Against Collateral</u>.  No costs or expenses of administration of the Chapter 11 Case or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no consent shall be implied from any other action, inaction, or acquiescence by the

15

DIP Lender, and nothing contained in this DIP Priming Order shall be deemed to be a consent by

the DIP Lender to any charge, lien, assessment, or claims against the DIP Collateral under section

506(c) of the Bankruptcy Code or otherwise.

8.    <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP

Lender pursuant to the provisions of this DIP Priming Order, the DIP Priming Documents, or any

subsequent order of the Bankruptcy Court shall be irrevocable, received free and clear of any

claim, charge, assessment, or other liability, including without limitation, any claim or charge

arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code,

whether asserted or assessed by through or on behalf of the Debtor.

9.    <u>Disposition of DIP Collateral</u>. The Debtor shall not sell, transfer, lease, encumber,

or otherwise dispose of any portion of the DIP Collateral, except as otherwise permitted by the

DIP Priming Documents or an order of the Bankruptcy Court except that following an Event of

Default, the DIP Lender shall retain all rights to exercise any and all remedies under the DIP

Priming mortgage.

10.    <u>Maintenance of Collateral</u>.  The Debtor shall continue to maintain and insure the

DIP Collateral in amounts and for the risks, and by the entities, as required under the DIP Priming

Documents.

11.    <u>Perfection of DIP Priming Liens</u>.

(a)    Without in any way limiting the automatically valid and effective perfection

of the DIP Priming Liens granted in this DIP Priming Order, the DIP Lender is hereby authorized,

but not required, to file or record (and to execute in the name of the Debtor, as its true and lawful

attorneys, with full power of substitution, to the maximum extent permitted by law) a record estate

mortgage and financing statements, notices of lien or similar instruments with the City Register,

16

including as may be reasonably required or deemed appropriate by the DIP Lender under applicable local laws, or take possession of or control over cash or securities, or to amend or modify security documents, or enter into, amend or modify intercreditor agreements, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to document, validate and perfect the liens and security interests granted to them hereunder (the "Perfection Actions"). Whether or not the DIP Lender shall take such Perfection Actions, the liens and security interests granted pursuant to this DIP Priming Order shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this DIP Priming Order. Upon the request of the DIP Lender, the Debtor, without any further consent of any party, and at the sole cost of the Debtor as set forth herein, is authorized and directed to take, execute, deliver and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the DIP Priming Liens in all jurisdictions, including all local law documentation therefor determined to be reasonably necessary by the DIP Lender. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of this DIP Priming Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept a certified copy of this DIP Priming Order for filing and/or recording, as applicable. The automatic stay shall be modified to the extent necessary to permit the DIP Lender to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

17

12.    <u>DIP Commitment Letter Events of Default</u>.  The DIP Priming Loan shall be subject to each of the following Events of Default (which can be waived by the DIP Lender in its absolute discretion) but still occur automatically without notice or an opportunity to cure.

- The Debtor's filing of a plan of reorganization in the Chapter 11 Case that has not been consented to by the DIP Lender unless such plan pays the DIP Obligations in full, in cash with all accrued interest and fees, on the effective date or upon such other terms as may be agreed upon by the DIP Lender in its sole discretion.

- The Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

- A default, subject to any applicable grace and/or cure periods, by the Debtor under the terms of the DIP Priming Documents.

- Appointment in the Chapter 11 Case of a Chapter 11 trustee or examiner with enlarged powers.

- Any sale of all or substantially all of the Debtor's assets unless the proceeds of such sale will indefeasibly satisfy the DIP Obligations in full in cash with interest and fees.

- The Debtor's failure to meet or comply with any deadline or milestone set forth herein.

- The use or application of any cash or proceeds in a manner not provided for in the Budget.

- Entry of an order (a) granting relief from stay to any party with regard to any interest in the DIP Collateral or any other property of the estate of the Debtor or (b) approving the transfer of any of the DIP Collateral, or the actual transfer of any of the DIP Collateral either voluntarily or by operation of law, to a party other than the DIP Lender.

- The institution of any action that may impair any interest in the DIP Collateral held by the DIP Lender.

13.    <u>Absolute Prohibitions</u>.  The Debtor cannot under any circumstances take any action to do the following:

- The Debtor shall file a pleading seeking to vacate or modify the DIP Order over the objection of the DIP Lender.

- The Debtor's filing of (or supporting another party in the filing of) a motion seeking entry of, or the entry of an order by the Bankruptcy Court, granting any super-priority claim or lien (except as contemplated herein) which is senior to or *pari passu* with the DIP Obligations.

- The granting of any lien senior to or *pari passu* with the DIP Liens.

14.    <u>Termination</u>.    Upon the occurrence and during the continuance of an Event of Default (except for Prohibited Transactions which shall constitute an immediate and incurable default) the DIP Lender may, by written five (5) days' notice to the Debtor, its counsel, the U.S. Trustee and counsel for any official committee appointed in the Chapter 11 Case: (i) terminate the DIP Priming Loan and/or the DIP Commitment Letter, as applicable, (ii) declare all of the obligations in respect of or related to the DIP Commitment Letter and the other DIP Priming Documents to be immediately due and payable, and (iii) exercise all rights and remedies under this DIP Priming Order.

15.    <u>Preservation of Rights Granted Under This DIP Priming Order</u>.

(a)    Other than claims and liens expressly granted by this DIP Priming Order, no claim or lien having a priority superior to or *pari passu* with those granted by this DIP Priming Order to the DIP Lender shall be permitted while any of the DIP Obligations remain outstanding, and, except as otherwise expressly provided in this DIP Priming Order, the DIP Priming Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of

19

any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Debtor.

(b)    The occurrence and continuance of any event of default in violation of any of the terms of this DIP Priming Order or the DIP Priming Documents, including the events of default set forth in paragraph 12 above, shall, after notice by the DIP Lender (acting in accordance with the terms of this DIP Priming Order) in writing to the Debtor, their bankruptcy counsel (Davidoff Hutcher & Citron LLP), the U.S. Trustee, and lead counsel to any official committee appointed in the Chapter 11 Case (and, in the case of violation of any terms of this DIP Priming Order, and after indefeasible payment in full in cash of the DIP Obligations and termination of the DIP Priming Loan, notice to such parties by the DIP Lender), constitute an event of default under this DIP Priming Order (an "Event of Default") and, upon such notice of any such Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Priming Documents. Notwithstanding any order that may be entered dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code: (i) the DIP Superpriority Claims, the DIP Priming Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this DIP Priming Order until all DIP Obligations shall have been paid in full in cash, where applicable (and that such DIP Superpriority Claims, DIP Priming Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this DIP Priming Order shall not be affected; and (iii) this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all of the claims, liens and security interests referred to in this paragraph and otherwise in this DIP Priming Order.

(c)    If any or all of the provisions of this DIP Priming Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Priming Liens. Notwithstanding any reversal, modification, vacatur or stay of any DIP Obligations incurred by the Debtor prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacatur or stay, any such use shall be governed in all respects by the original provisions of this DIP Priming Order, and the DIP Lender shall be entitled to, and is hereby granted, all the rights, remedies, privileges and benefits arising under section 364(e) of the Bankruptcy Code, this DIP Priming Order and the DIP Priming Documents with respect to all uses of the DIP Obligations.

16.    Except as expressly provided in this DIP Priming Order or in the DIP Priming Documents, the DIP Priming Liens, the DIP Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this DIP Priming Order and the DIP Priming Documents shall survive with priority over all existing liens and mortgages, and shall not be modified, impaired or discharged by: (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Chapter 11 Case or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Priming Documents); or (iii) the entry of an order confirming a chapter 11 plan in the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations. The terms and provisions of this DIP Priming Order and the DIP

21

Priming Documents shall continue in the Chapter 11 Case, in any Successor Cases and in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Priming Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of this DIP Priming Order and the DIP Priming Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Priming Documents, and the DIP Priming Loan has been terminated.

17.    <u>Payment of Fees and Expenses</u>. The Debtor is authorized to and shall pay the DIP fees and expenses in accordance with the DIP Priming Documents, and such DIP fees and expenses, and professionals for the DIP Lender shall not be required to comply with the U.S. Trustee fee guidelines, *provided that* copies of invoices for such professional fees, expenses, and disbursements (the "<u>Invoiced Fees</u>") shall be served by email on the Debtor, the U.S. Trustee, and counsel to any official committee appointed in the Chapter 11 Case, who shall have five (5) business days (the "<u>Review Period</u>") to review and assert any objections thereto. Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Chapter 11 Case, and such invoice summary shall not be required to contain time entries, but shall include a list of professionals providing services, with rates and hours worked, and a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any

22

other evidentiary privilege or protection recognized under applicable law. The Debtor, any official committee appointed in the Chapter 11 Case, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, any official committee that may be appointed in the Chapter 11 Case, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Bankruptcy Court, if necessary, of a motion or other pleading, with at least ten (10) business days' prior written notice to the submitting party of any hearing on such motion or other pleading). For avoidance of doubt, the Debtor shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

18.    <u>Limitation on Use of DIP Priming Financing Proceeds and Collateral</u>. Notwithstanding any other provision of this DIP Priming Order or any other order entered by the Bankruptcy Court, no DIP Priming Loans or DIP Collateral may be used directly or indirectly for items not set forth in the budget, but can never under any circumstances be used to pay for (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation: against the DIP Lender and its predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, in each case in their respective capacity as such, or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Priming Liens, DIP Superpriority Claims, granted to the DIP Lender; (b) to prevent, hinder, or otherwise delay or interfere with the DIP Lender's enforcement or realization on the DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under this DIP Priming Order following an uncurable default or Event of Default, as applicable, each in accordance with the DIP Priming Documents, or this DIP Priming Order.

19.    <u>DIP Priming Order Governs</u>. In the event of any inconsistency between the provisions of this DIP Priming Order and the DIP Priming Documents or any other order entered by this Bankruptcy Court, the provisions of this DIP Priming Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Bankruptcy Court, any payment made pursuant to any authorization contained in any other order entered by this Bankruptcy Court shall be consistent with and subject to the requirements set forth in this DIP Priming Order and the DIP Priming Documents, including, without limitation, the Budget.

20.    <u>Binding Effect; Successors and Assigns</u>. The DIP Priming Documents and the provisions of this DIP Priming Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and its successors and assigns; <u>provided</u> that the DIP Lender shall have no obligation to permit the use of the DIP Collateral by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estate of the Debtor.

21.    <u>Exculpation</u>. Nothing in this DIP Priming Order, the DIP Priming Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender for any claims arising from the pre-petition or post-petition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts. The DIP Lender shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto

24

occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtor.

22.    <u>Limitation of Liability</u>. In determining to make any loan or other extension of credit under the DIP Priming Documents, to permit the use of the DIP Collateral or in exercising any rights or remedies as and when permitted pursuant to this DIP Priming Order or the DIP Priming Documents, the DIP Lender shall not: (a) be deemed to be in "control" of the operations of the Debtor; (b) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this DIP Priming Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

23.    <u>Insurance</u>. To the extent that the Prepetition Lender is listed as loss payee under the Debtor's insurance policies, the DIP Lender is also deemed to be the loss payee under the insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of the insurance policies, to the indefeasible payment in full of the applicable DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Priming Loan.

24.     <u>Credit Bidding</u>. The DIP Lender shall have the right to credit bid, in accordance with the DIP Priming Documents, up to the full amount of the applicable DIP Obligations in any sale of the DIP Collateral outside the ordinary course of business and without the need for further Bankruptcy Court order authorizing the same and whether any such sale is effectuated through section 363(k), 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. No prepetition secured claimant may credit bid in any disposition of any DIP Collateral unless such sale provides for indefeasible payment in full in cash to the DIP Lender of all DIP Obligations.

25.     <u>Effectiveness</u>. This DIP Priming Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this DIP Priming Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this DIP Priming Order.

26.     <u>Governing Order</u>. Notwithstanding the relief granted in any other order by this Bankruptcy Court: (i) all payments and actions by the Debtor pursuant to the authority granted therein shall be subject to this DIP Priming Order, including compliance with the Budget and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of such other order and this DIP Priming Order, this DIP Priming Order shall control, in each case, except to the extent expressly provided otherwise in such other order.

27.     <u>Modification of DIP Priming Documents and Budget</u>. The Debtor is hereby authorized, without further order of this Bankruptcy Court, to enter into agreements with the DIP Lender providing for any consensual non-material amendments, modifications, waivers, or

supplements to the Budget or the DIP Priming Documents, or of any other amendments, modifications, waivers, or supplements to the DIP Priming Documents necessary to conform the terms of the DIP Priming Documents to this DIP Priming Order, in each case consistent with any amendment provisions of the DIP Priming Documents; provided, however, that notice of any material amendment, modification, waivers, or supplement to the DIP Priming Documents shall be provided to the U.S. Trustee and any statutory committee, which shall have five (5) calendar days from the date of such notice within which to object, in writing, to the amendment, modification, waivers, or supplement. If the U.S. Trustee, or any statutory committee, timely objects to any such material amendment, modification, waivers, or supplement to the DIP Priming Documents, the material amendment, modification, waivers, or supplement shall only be permitted pursuant to an order of the Bankruptcy Court. The foregoing shall be without prejudice to the Debtor's right to seek approval from the Bankruptcy Court of a material amendment, modification, waivers, or supplement on an expedited basis.

28.    Indemnification. The Debtor shall indemnify and hold harmless the DIP Lender and its affiliates and each of the respective officers, directors, employees, controlling persons, agents, advisors, attorneys, and representatives of the DIP Lender (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities, and expenses (including, without limitation, fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or relating to any investigation, litigation, or proceeding or the preparation of any defense with respect thereto, arising out of or in connection with or related to the DIP Priming Loan or the transactions contemplated thereby, or any use made or proposed to be made with the DIP Priming Loan proceeds, whether or not such investigation, litigation, or proceeding is brought by any

27

Debtor or any member or creditors of the foregoing, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether to not the transactions contemplated hereby, except, with respect to any Indemnified Party, to the extent such claim, damage, loss, liability, or expense is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Party's fraud, gross negligence, or willful misconduct.

29.    <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this DIP Priming Order.

30.    <u>Payments Held in Trust</u>. Except as expressly permitted in this DIP Priming Order or the DIP Priming Documents, and except with respect to the Debtor, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of the DIP Priming Loan, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Lender and shall immediately turn over the proceeds to the DIP Lender, or as otherwise instructed by this Bankruptcy Court, for application in accordance with the DIP Priming Documents and this DIP Priming Order.

31.    <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

32.    <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this DIP Priming Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

28

33.    <u>Necessary Action</u>. The Debtor and the DIP Lender are authorized to take all actions as are necessary or appropriate to implement the terms of this DIP Priming Order. In addition, the automatic stay is modified to permit affiliates of the Debtor who are not debtors in the Chapter 11 Case to take all actions as are necessary or appropriate to implement the terms of this DIP Priming Order.

34.    <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this DIP Priming Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

35.    The Debtor shall promptly serve copies of this DIP Priming Order to the parties having been given notice of the Hearing and to any party that has filed a request for notices with this Bankruptcy Court.

Dated: February __, 2025
New York, New York

_____
HONORABLE PHILIP BENTLEY
UNITED STATES BANKRUPTCY JUDGE

29

## **Exhibit A**

DIP Commitment Letter and Budget

# CASTELLAN

## C A P I T A L

122 East 42ⁿᵈ Street Suite 1903
New York, NY 10168
646.545.6700

~~January~~ FEBRUARY 3, 2025

Madison 33 Owner LLC
c/o David Goldwasser, CRO
FIA Capital Partners, LLC
3284 N. 29ᵗʰ Court
Hollywood, FL 33020-1320

Re:    172 Madison Avenue, New York, NY 10016

Dear Mr. Goldwasser:

Castellan Capital LLC or an affiliate ("the Lender") is pleased to provide the following Letter of Interest to the Borrower to consider making a senior priming DIP loan pursuant to 11 U.S.C. Section 364(d) secured by a first primary lien encumbering certain residential and commercial units owned by Madison 33 Owner LLC at the above referenced property (the "Property"). The loan shall hereinafter be defined as the DIP Loan (the "DIP Loan"). The terms of this Letter of Interest are subject to ratification by the Lender's Investment Committee and include the following:

| | |
|---|---|
| **Borrower:** | Madison 33 Owner LLC |
| **Key Principals:** | Yitzchak Tessler |
| **DIP Loan Amount:** | $22,000,000 |
| **Minimum Square Footage:** | To be compiled |
| **Collateral:** | The DIP Loan shall be secured by: |

    1. First priority "priming" mortgage lien pursuant to 11 U.S.C. Section 364(d) covering units PHA, PHB, PHC, PHD, PH Sky, CV-A, CV-B, 11B, 15B, 17B, 18B and 27A and at the above referenced Property, together with all related rights (the "Pledged Units");

2

2. Assignment and security interest in all current and future leases relating to the Pledged Units;
3. Assignment of all plans, contracts, approvals, licenses, and permits;
4. UCC liens on all personal property, equipment and fixtures in the Pledged Units; and
5. Completion Guarantee for C of O and Condo Book.

**DIP Loan Term:**  Twenty-Four (24) Months.

**Origination Fee:**  3% ($660,000.00) with Lender to pay brokerage.

**Interest Rate:**  30 Day AMERIBOR (AMBOR30T) + 5.12%, with a floor rate of 9.25% adjustable monthly. Interest will be calculated on an actual/360 basis and paid current on a monthly basis. Payments shall be due on the first (1st) day of each month and shall be paid by wire transfer. A late fee of 6.0% shall apply to any payments (inclusive of any escrow payments) received after the fifth (5th) day of the month. If Lender accepts a pro rata portion of any monthly payment, Borrower shall nonetheless pay a late fee equal to 6% of the total amount that should have been paid. Notwithstanding the foregoing, in no event shall Lender charge interest in excess of the maximum lawful rate applicable to the DIP Loan.

**Prepayment:**  **NO PREPAYMENT PENALTY.**

**Minimum Interest:**  **NO MINIMUM INTEREST PERIOD.**

**Recourse:**  The DIP Loan shall be fully recourse to the Borrower and shall be subject to Bankruptcy Court approval pursuant to a DIP financing motion in form satisfactory to Lender and its counsel and providing good faith Lender protections. If approved the terms of the DIP Order shall be incorporated as part of the Borrower's plan of reorganization, with the treatment of the Lender's claim to be consistent therewith. The Borrower shall be obligated for reimbursement of payment with respect to all expenses, including but not limited to payment of principal, interest and fees on debt in excess of the interest reserve, property operating expenses, real estate taxes, insurance premiums and related fees, and performance of Borrower's other monetary obligations under the loan documents.

**Estimated Sources and Uses:**

| Sources | | |
|---|---|---|
| DIP Loan Amount | $22,000,000.00 | 100.00% |
| **Total Sources** | **$22,000,000** | **100.00%** |
| **Uses** | | |
| Origination Fee | $660,000.00 | 3% |
| Outstanding RE Taxes | $2,820,564 | |
| 2025 Ad-Valorem Tax Reserve | $490,325.00 | |
| Hard Costs to Finish Project | $13,522,761.00 | |
| Construction Reserve | $677,239.00 | |
| DIP Loan Interest Reserve | $2,519,000.00 | |
| Closing Costs | $50,000.00 | |
| Lender's Legal Fee | $50,000.00 | |
| Ch 11 Professional Fees | $275,000.00 | |
| Post-Petition Condo Charges | $178,010.12 | |
| 2025 Condo Charges Reserve | $534,030.36 | |
| Other Contingency | $223,070.52 | |
| **Total Uses** | **$22,000,000** | **100.00%** |

| | |
|---|---|
| **Interest Reserve:** | At closing, the Lender shall establish an Interest Reserve equal to approximately Two Million Five Hundred and Nineteen Thousand Dollars ($2,519,000) to be released. To the extent there is any shortfall, Borrower shall pay the difference in accordance with the terms of the Note. |
| **Construction Reserve:** | At closing, the Lender shall establish from the loan proceeds a Construction Reserve account of approximately Fourteen Million and Two Hundred Thousand Dollars ($14,200,000) to be drawn upon for work completed on the Pledged Units per the approved budget. Borrower shall provide invoices, lien release waivers and any other requested documentation at Lender's reasonable discretion under a certified requisition prior to disbursement. Interest shall only be charged on Construction Reserve funds once disbursed. |
| **Other Costs:** | Borrower agrees to reimburse Lender at closing for any share of taxes due from Lender for mortgage |

recording or property transfer, it being understood that the DIP Loan shall be subject to conventional loan documents and recordable mortgage instruments.

**Subordinate Financing:** No senior or *pari passu* financing will be permitted against the Pledged Units.

**Assumability:** The DIP Loan is not assumable or assignable by the Borrower, and must be restated and reconfirmed under the plan of reorganization which shall not impair the DIP Loan in any way.

**Transferability/Release Prices:** The DIP Loan shall be due upon the sale or transfer of any of the Pledged Units pursuant to agreed release prices.

**Application Fee:** $40,000, including the $15,000 pre-paid deposit funded by third parties.

**Survey:** A survey shall be required. The costs shall be paid by the Borrower.

**Exclusivity:** Borrower and Key Principal(s) agree and acknowledge that Lender is devoting resources to the underwriting and analysis of the DIP Loan at the exclusion of other business opportunities and that financing opportunities are limited and extremely competitive. Accordingly, the Borrower and Key Principal(s) agree, upon issuance of a commitment letter, to cease all discussion with any financing sources and work solely with Lender to complete due diligence and obtain Bankruptcy Court approval of the DIP Loan.

**Construction Schedule:** The Borrower shall provide the Lender with a Construction Schedule prior to closing subject to the Lender's consent, not be unreasonably withheld.

**Construction Budget:** The Borrower shall provide the Lender with a Construction Budget prior to closing subject to the Lender's consent, not be unreasonably withheld.

**Funding Conditions:** Pursuant to the agreed upon project budget, total project costs in excess of the DIP Loan Amount shall be contributed by the Borrower or the Borrower's principals. The Borrower shall fund all equity required prior to the Lender disbursing Construction

2

|  | Reserve funds. The architect, construction manager, and general contractor shall be approved by the Lender. Subcontracts for at least 75% of the hard costs shall be approved by the Lender, subject to an agreed construction budget. The Lender's construction consultant shall review and approve the plans, drawings, specifications, permits, contracts, approvals, and project budget, at the Borrower's expense. The Borrower shall furnish the Lender a certification that the plans and specifications comply with all applicable laws and regulations, a complete detailed budget, and a set of approved plans and specifications. Each advance shall be used solely to fund work completed per the agreed upon construction budget and certified requisition. |
|---|---|
| **Other:** | Upon Borrower's acceptance of this Letter of Interest and payment of the Application Deposit as outlined herein, Lender shall commence its due diligence and the documentation of the DIP Loan based on terms outlined herein. Such documentation shall include Lender's loan documentation including but not limited to: DIP mortgage, and note, loan agreement, environmental indemnity agreement, security agreement, assignment of leases and rents, an opinion letter from Borrower's counsel as the first priority status based upon Bankruptcy Court Order, and other documents, instruments, and/or undertakings as required by Lender and Lender's counsel. Notwithstanding the foregoing, Lender reserves the right to modify the terms of the DIP Loan in its sole discretion based upon facts and circumstances learned during the conduct of its due diligence. The Lender reserves the right to participate, sell or assign its interest in the DIP Loan to another Lender or investor and that the credit information related to the DIP Loan request may be disclosed to such participant Lender. Borrower agrees to cooperate with Lender in obtaining or providing information to facilitate any participation or sale. Any expenses incurred by Lender in this process will be paid by the Lender. |
| **Title Insurance:** | Title Insurance shall be provided by a commercially reputable insurer acceptable to Lender. |
| **Title Policy:** | The DIP Loan is contingent on the Borrower providing a title report that is to be reviewed by |

2

Lender and subject to the Lender's attorney approval.

**Brokerage Fees:** Brokerage fee shall be paid by Lender and not added to the DIP Loan Amount.

**Property Tax Escrow:** The Borrower shall remit to Lender at closing an amount sufficient to fund an escrow account for real estate taxes for one year from the date of closing. In the event real estate taxes shall increase during the term of the DIP Loan, Borrower shall be required to fund such additional amount as determined by Lender in order to maintain sufficient funds to pay such taxes as the same become due.

**Insurance:** The Borrower shall provide evidence that the insurance premiums for one year from the date of closing are paid in full.

**Water & Sewer Escrow:** The Borrower will remit to the Lender at closing an amount sufficient to fund an escrow account for water and sewer bills for one year from the date of closing. In the event the water and sewer bills shall increase during the term of the DIP Loan, Borrower shall be required to fund such additional amount as determined by Lender in order to maintain sufficient funds to pay such water and sewer bills as the same become due.

**Indemnity:** Subject to Bankruptcy Court approval, Borrower hereby agrees to defend, indemnify, exonerate, and hold harmless Lender and each of its officers, directors, investors, affiliates, employees and agents (the "Indemnities") from and against any and all liabilities, obligations, losses, damages, claims, actions, suits, proceedings, judgments, costs and expenses, including legal fees and other expenses incurred in the investigation, defense, appeal and settlement of claims, actions, suits and proceedings incurred by the Indemnities or any of them relating to this Letter of Interest.

**Letter of Interest:** Borrower understands and agrees that this Letter of Interest is provided by Lender may be submitted to the Court subject to due diligence. As such the terms set forth herein are not binding upon Lender unless and until the results of due diligence are satisfactory and the Bankruptcy Court approves same, Lender

may withdraw from such discussion at any time within five (5) days of the expiration of due diligence and for any reason in Lender's sole and absolute discretion. Borrower further understands and agrees that Lender is not obligated to enter into the transaction contemplated by this Letter of Interest, on the terms set forth herein unless and until the Lender is satisfied with due diligence and the Bankruptcy Court approves the same. Notwithstanding the foregoing, Borrower understands and acknowledges that all of its representations, warranties, covenants and obligations are binding and enforceable against it, and Lender is relying on same to enter into this Letter of Interest and proceed with due diligence.

**Offer Expiration:**              This letter (unless countersigned and returned along with the Application Deposit) shall expire five (5) days from the date of this letter.

This letter does not constitute a commitment or approval to lend in any manner. Any commitment by Lender to lend is contingent upon the completion and ratification by Lender's Investment Committee of our due diligence review.

**BORROWER ACKNOWLEDGES THAT THIS IS A NON-BINDING LETTER OF INTEREST AND IN NO WAY REPRESENTS A COMMITMENT OR APPROVAL TO LEND.**

Sincerely,

Paul Salib Managing Principal
Castellan Capital LLC

*Agreed and Accepted:*


Borrower:

By: _____

Its: __M.M._____

2

**<u>Wire Instructions:</u>**

| | |
|---|---|
| Receiving Bank: | Webster Bank, N.A. |
| Receiving Bank Address: | 489 Fifth Avenue, 17th Floor, New York, NY 10017 |
| Receiving Bank Routing #: | 221970443 |
| Beneficiary Name: | Castellan Real Estate Income Fund II LP – Deposit Account |
| Beneficiary Account #: | 6700362739 |
| Beneficiary Address: | 122 East 42nd Street, Suite 1903, New York, NY 10168 |
| SWIFT Code: | STETUS33 (For International Wires Only) |