UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                Chapter 11

MADISON 33 OWNER, LLC,                                 Case No.:  1:24-bk-11463 (PB)

                                Debtor.
-------------------------------------------------------------x

**DECLARATION OF DAVID GOLDWASSER IN SUPPORT
OF DEBTOR'S MOTION (I) AUTHORIZING THE DEBTOR TO
OBTAIN POST-PETITION FINANCING ON A SENIOR PRIORITY
BASIS, (II) GRANTING PRIMING LIENS PURSUANT TO SECTION 364(d)
OF THE BANKRUPTCY CODE AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTION 364(c)(1)
OF THE BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF**

     I, David Goldwasser, serve as Chief Restructuring Officer ("CRO") for the above captioned

debtor and debtor in possession (the "Debtor"), and hereby file this declaration (the "Declaration")

in support of the Debtor's *Motion (I) Authorizing the Debtor to Obtain Post-Petition Financing on*

*a Senior Priority Basis, (II) Granting Priming Liens Pursuant to Section 364(d) of the Bankruptcy*

*Code and Providing Superpriority Administrative Exoense Status Pursuant to Section 364(c)(1) of*

*the Bankruptcy Code, and (III) Granting Related Relief* (the "DIP Motion"), being filed

contemporaneously herewith.[1]

     1.     I serve as the Debtors' CRO and have reviewed the Motion, and except as otherwise

noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would

testify competently thereto.

     2.     I understand that pursuant to the Motion, the Debtor is seeking to obtain post-

petition financing ("DIP Priming Financing") pursuant to a priming senior secured debtor-in-

---

[1]    Terms not otherwise defined herein shall have the meaning ascribed to them in the DIP Motion.

possession term loan in accordance with and subject to the terms and conditions set forth in that certain DIP Commitment Letter attached to the Motion in the aggregate principal amount not to exceed $22,000,000 (the "DIP Priming Loan").

3.     I believe that: (i) the Debtor has an immediate and critical need to obtain the DIP Priming Financing in order to permit, among other things, the Debtor to make capital expenditures and to satisfy other working capital and operational needs and to fund expenses of the Chapter 11 Case in accordance with and subject to the Budget, and (ii) the access of the Debtor to sufficient working capital and liquidity through the use of DIP Collateral and the incurrence of new indebtedness under the DIP Priming Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtor and to a successful reorganization of the Debtor.

4.     Specifically, the Debtor requires the DIP Priming Loan to complete the buildout of the five (5) Penthouse Units, which the Debtor projects will substantially increase their existing value in an amount well in excess of the required DIP Priming Loan. See appraisal attached to the Motion, Exhibit D-1 and D-2. The DIP Priming Loan will also be used to fund payment of professional fees approved by the Bankruptcy Court, U.S. Trustee fees, real estate and other taxes, and condo charges.

5.     The successful completion and ultimate sale of the Penthouse Units will permit the Debtors to consummate their Plan of Reorganization [ECF Doc. 46].

6.     I am aware that the guidelines of this Court governing the Motion require that the Debtor solicit multiple offers for DIP financing prior to making its business decision on the selection of the best DIP loan offer to present to the Court.

7.       Prior to agreeing to enter into the DIP Priming Loan, I along with the Debtor made a broad search for financing.

8.       Prior to reaching out to other parties, the Debtor first attempted to secure the needed financing from Palm Avenue Hialeah Trust, the current first lienholder on the Debtor's Property (the "Prepetition Lender"). After a number of arm's length discussions between the parties regarding the request for and terms of such a financing, the Prepetition Lender determined not to provide any post-petition financing to the Debtor.

9.       Following the decision by the Prepetition Lender not to provide financing, the Debtor reached out to several parties, including:

- Castellan Capital LLC
- 364 Capital, LLC
- Secretariat Capital, LLC
- FM Capital
- Lane Capital
- Green Hollow Capital

10.       Based on the offers received, the Debtor determined that the proposed DIP Priming Loan offered by the DIP Lender contained the best terms, interest rate, conditions, maturity date, and overall flexibility.

11.       Given the Debtor's extensive search, the Debtor determined that it could not find financing on more favorable terms from sources other than the DIP Lender under the DIP Priming Documents and would be unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Moreover, the Debtor also determined that it could not obtain secured credit without granting to the DIP Lender the DIP Priming Liens and the DIP Superpriority Claims, under the terms and conditions set forth in this DIP Order and in the DIP Priming Documents.

3

12.     I believe that the terms of the DIP Priming Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

13.     I, along with Debtor's counsel, have been fully involved in all negotiations for the DIP Priming Financing. Based on those negotiations, I also believe that the DIP Priming Financing has been negotiated in good faith and at arm's length between the Debtor and the DIP Lender, and that all of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with, the DIP Priming Financing and the DIP Priming Documents, including, without limitation, all loans made to the Debtor pursuant to the DIP Priming Documents are being extended by the DIP Lender in good faith.

14.     I assisted with the preparation of the Budget, and I believe that it reflects, among other things, the Debtor's anticipated disbursements for each calendar week, and is in form and substance satisfactory to the DIP Lender. I believe that Budget is reasonable under the facts and circumstances.

15.     This concludes my Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 4, 2025

　　 /s/ David Goldwasser
David Goldwasser
Debtors' Chief Restructuring Officer