DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 24-11463 (PB) |
| MADISON 33 OWNER, LLC, | |
| Debtor. | |

-------------------------------------------------------------X

## SECOND AMENDED DISCLOSURE STATEMENT

### I.    INTRODUCTION

Madison 33 Owner, LLC (the "Debtor") together with Yitzchak Tessler (collectively, the "Plan Proponents") submit this Second Amended Disclosure Statement pursuant to Section 1125(b) of Title 11, United States Code, 11 U.S.C. §§ et seq. (the "Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in connection with the First Amended Plan (the "Plan") to all known holders of Claims[1] against or Interests in the Debtor in order to adequately disclose information deemed to be material, important, and necessary for the Debtor's creditors to make a reasonably informed judgment about the Plan.

The Plan seeks to implement a final settlement reached with the Debtor's senior mortgage lender, Palm Avenue Hialeah Trust, a Delaware statutory trust, for and on behalf of and solely with respect to Series 2023-3 (the "Lender"), following months of negotiations.  The settlement is

---

[1]    All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

incorporated under the Plan and provides for the disposition of the Lender's secured claim while affording the Plan Proponents the opportunity to realize value in the five (5) unfinished penthouse units. The Plan contemplates both a transfer of units to the Lender and the refinancing of the residual debt. Yitzchak Tessler shall become the sole equity holder of the Reorganized Debtor based upon his New Value Contribution of $3.0 million which will be used to pay certain outstanding real estate taxes and Condo fees.

The Bankruptcy Court approved this Disclosure Statement under Section 1125(b) of the Bankruptcy Code on a preliminary basis and has scheduled a combined hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan on June 24, 2025 (the "Hearing").

### A. Background.

Formed on July 24, 2013, the Debtor is a domestic limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 172 Madison Avenue, Unit 27A, New York, NY 10016.

### 1. The Property.

The Debtor was formed to develop the real property located at 172 Madison Avenue, New York, New York (the "Property"). The Property is a fully constructed 33-story mixed-use luxury high rise condominium with 70 residential units and two (2) commercial units (the "Commercial Units"). Only ten (10) residential units remain unsold at this time and include five (5) finished non-penthouse units (Nos. 11B, 15B, 17B, 18B and 27A, collectively, the "Immediate Transfer Units"), and five (5) unfinished penthouse units (including one "sky house") in "white box" condition (collectively, the "Unfinished Penthouse Units" and together with the Immediate Transfer Units, the "Residual Sponsor Units").

2

On October 28, 2013, the Debtor acquired the Property through a bankruptcy sale. The Debtor contributed $24,000,000 of its own capital towards the acquisition plus obtained financing under a series of loans issued by Deutsche Bank, AG, ("DB").  Specifically, DB issued the following facilities (i) loan in the original principal amount of $75,852,054.53 (the "Senior Loan"); (ii) loan in the principal amount of $3,400,000 (the "Building Loan"); and (iii) loan in the principal amount of $8,351,444.39 (the "Project Loan" and, collectively, with the Senior Loan and the Building Loan, referred to herein as the "Loan Agreements"), collateralized by the Property and the Debtor's member interests in the Owner.

### 2.    Development of the Property.

On or around August 2014, excavation at the Property commenced.  In or around April 2015 construction and marketing commenced at the Property with permitting in place. The first closing on a unit sale occurred on May 19, 2017. To date, sixty (60) residential units have been sold for an aggregate sale price of $162,578,630, with net proceeds paid to DB to reduce the loan obligations down to an estimated $43.5 million.

### 3.    Dispute with Lender and Its Predecessor.

Despite the Debtor's continued sales and payments, DB declared a maturity default on or around February 2022. The Debtor alleged that DB's declaration of a default was not made in good faith. During this period, equity holders contributed approximately $6,499,648.28 in personal funds and capital calls to continue with the Debtor's sale and marketing efforts. Nevertheless, DB continued to hold the Debtor in default.

In early 2024, DB tentatively agreed with the Debtor to accept $32,500,000 in full satisfaction of the remaining indebtedness. This agreement was not executed, however, and DB assigned the Loan Agreements to the Lender.  The Lender scheduled a UCC-1 foreclosure sale of the equity

3

interests in the Debtor held by Madison 33 Partners LLC ("Partners"), which filed for Chapter 11 bankruptcy relief on June 4, 2021 (the "Partners Bankruptcy").

The Debtor and the Lender determined that for a successful Chapter 11 reorganization to be achieved, the Debtor, which actually owns the Property, also needed to file for Chapter 11 protection. The Debtor commenced this Chapter 11 Case on August 26, 2024 (the "Petition Date").

**4.      Use of Cash Collateral and Efforts to Finance the Property.**

Shortly after the Petition Date, the Debtor filed a motion (the "Cash Collateral Motion") [Dkt. No. 5] seeking entry of interim and final orders authorizing (i) the Debtor's use of cash collateral in accordance with a proposed budgets to maintain the Property.  Following a hearing on this matter, the parties agreed to use of cash collateral which was memorialized in an interim order of the Bankruptcy Court. [Dkt. No. 26].  Thereafter, the Debtor's use of cash collateral has been continued by several stipulations.

In early 2025, the Debtor solicited DIP financing proposals to complete construction of the Unfinished Units.  On February 4, 2025, the Debtor filed a motion for the approval of a post-petition loan [Dkt. No. 71] (the "DIP Financing Motion") seeking authority to prime the Lender's liens.

Following the filing of the DIP Financing Motion, the Lender filed its *Motion to Lift the Automatic Stay and/or Dismiss the Chapter 11 Case* [Dkt. No. 100] ("Stay Relief Motion").  This galvanized renewed settlement negotiations which included formal mediation and Tessler's retention of separate counsel.  The Debtor understood the need to satisfy the Lender's desire to obtain an immediate transfer of the finished units.  Accordingly, the Debtor and Tessler reformulated a revised settlement around this concept and ultimately reached an agreement which now forms the cornerstone of the Plan.

5.      **Framework for Plan.**

To gain the Lender's support for the Plan, the Debtor is no longer seeking DIP financing and the Plan instead provides for the immediate transfer and conveyance of the Immediate Transfer Units to the Lender to reduce its Allowed Secured Claim.  The transfer of the Immediate Transfer Units shall be based upon an agreed valuation of $22.5 million and shall be applied to reduce the Lender's agreed Secured Claim to an agreed balance of $23 million.  This reduced balance shall accrue interest at a rate of seven (7%) percent per annum during the period beginning as of the Effective Date of the Plan and continuing through the subsequent post-confirmation refinancing of the five remaining Unfinished Penthouse Units (the "Exit Financing") or such longer time if the Plan is not substantially consummated.  The Debtor intends to seek post-confirmation Exit Financing in the total sum of approximately $35 million, which is projected to be sufficient to pay-off the residual secured debt owed to the Lender of $23 million with interest, plus pay-off any residual pre-petition real estate taxes and agreed condominium fees and charges ("CAM").  Additionally, the Exit Financing will provide liquidity to complete construction of the five Unfinished Penthouse Units projected to cost approximately $10 million.

The Debtor's principal, Yitzchak Tessler, shall personally contribute the sum of $3.0 million within fourteen (14) days of entry of the Confirmation Order anticipated to be July 8, 2025 (the "Funding Date") as his new value contribution (the "New Value Contribution").  The New Value Contribution shall be used to pay allowed Administrative Expenses (including post-petition real estate taxes and certain CAM charges) and Professional Fees and U.S. Trustee fees.  Based upon the agreed reduction of the secured mortgage debt through the transfer of the Immediate Transfer Units, the Debtor believes it will be eligible to obtain Exit Financing within a period of one hundred-twenty (120) days of the last Bankruptcy Court hearing on April 22, 2025 (or no later than August 20, 2025).

The Debtor views the remaining Unfinished Penthouse Units as potentially having a combined total value of $47 million or more once completed.[2]  Pending the Exit Financing, the Lender shall retain its first mortgage Lien against the five (5) Unfinished Penthouse Units.

The Debtor has negotiated to obtain the Lender's consent to the Plan based upon the settlement read into the record of the April 22, 2025 hearing.  The settlement reached with the Lender is now incorporated under the Plan and provides the best opportunity to maximize the value of the Residual Sponsor Units, and, perhaps most importantly, positions the Debtor and Lender alike to gain Attorney General approval to an Amended Condominium Offering Plan.  Such approval is a necessary pre-requisite for the Debtor (or the Lender for that matter) to pursue third-party sales of the Residual Sponsor Units.  The Attorney General is far more inclined to approve an Amended Offering Plan if it is filed in concert with an agreement between the Debtor and the Lender as manifested by the Plan.  Without an approved Amended Offering Plan, the Lender would face the prospect of protracted and costly foreclosure litigation while being forced to assume all accrued and future real estate taxes.  Moreover, a consensual plan provides significant tax benefits and exemptions to the Debtor's estate, which simply cannot be replicated.

The Plan Proponents and the Lender believe that the Plan is a good faith effort by the Plan Proponents to meet the Lender's demands for prompt disposition of the Immediate Transfer Units while preserving the Debtor's ability to achieve a stabilized return on remaining five (5) Unfinished Penthouse Units after completion of construction.  The Debtor's principal is willing to contribute to the Plan with fresh capital to demonstrate that he remains committed to a successful conclusion to the project.

---

[2]    The projected value of $47 million is predicated upon $8 million each for the four Unfinished Penthouse Units and $15 million for the Sky-Top unit.

**6.      Bar Dates.**

On September 13, 2024, the Court entered a bar date order setting the last day to file proof of claims to be October 28, 2024 ("Bar Date") and February 23, 2025 ("Government Bar Date") for government entities. Accordingly, any Creditor that files a proof of a prepetition claim with the Bankruptcy Court on or before the Bar Date or Government Bar Date, as applicable, and whose Claim is deemed an Allowed Claim as defined in the Plan, will receive a Distribution in accordance with the terms of the Plan. Any Creditor who fails to file proof of a prepetition claim on or before the Bar Date or Government Bar Date, as applicable, and which Creditor was not listed on the Debtor's schedules or was listed on the schedules as "disputed," "contingent" or "unliquidated" on the Debtor's schedules, will not receive a Distribution under the Plan.

**7.      Voting Procedures.**

Holders of Class 1, 2, 3, 4, and 5 Claims are entitled to vote to accept or reject the Plan. For each such Holder, the Debtor has enclosed, along with a copy of this Disclosure Statement, among other things, a ballot and voting instructions regarding how to properly complete the ballot and submit a vote with respect to the Plan. For detailed voting instructions, please refer to the specific voting instructions and the ballot enclosed with this Disclosure Statement.

**All completed ballots must be actually received no later than 5:00 p.m. (EST) on a date to be determined (the "Voting Deadline") by regular mail, overnight mail, hand delivery or electronic mail:**

**If by regular mail, overnight mail or hand delivery:** Davidoff Hutcher & Citron LLP, c/o Jonathan S. Pasternak, Esq., 605 Third Avenue, New York, NY 10158.

**If by electronic mail:**
jsp@dhclegal.com and
cmp@dhclegal.com

**BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED. ADDITIONALLY, THE FOLLOWING BALLOTS SHALL NOT BE COUNTED OR CONSIDERED FOR ANY PURPOSE IN DETERMINING WHETHER THE PLAN HAS BEEN ACCEPTED OR REJECTED: (A) ANY BALLOT THAT IS PROPERLY COMPLETED, EXECUTED AND TIMELY SUBMITTED, BUT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR THAT INDICATES BOTH AN ACCEPTANCE AND REJECTION OF THE PLAN, (B) ANY BALLOT THAT IS PROPERLY COMPLETED, EXECUTED, AND TIMELY SUBMITTED, BUT INDICATES PARTIAL REJECTION AND/OR PARTIAL ACCEPTANCE OF THE PLAN WITH RESPECT TO MULTIPLE CLAIMS IN THE SAME CLASS, (C) ANY BALLOT ACTUALLY RECEIVED AFTER THE VOTING DEADLINE, EVEN IF POSTMARKED BEFORE THE VOTING DEADLINE, UNLESS THE DEBTOR SHALL HAVE GRANTED, IN WRITING, AN EXTENSION OF THE VOTING DEADLINE WITH RESPECT TO SUCH BALLOT, (D) ANY BALLOT THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE CLAIMANT, (E) ANY BALLOT CAST BY A PERSON OR ENTITY THAT DOES NOT HOLD A CLAIM IN A CLASS THAT IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, (F) ANY BALLOT CAST FOR A CLAIM SCHEDULED AS UNLIQUIDATED, CONTINGENT, OR DISPUTED FOR WHICH NO PROOF OF CLAIM WAS TIMELY FILED, (G) ANY BALLOT CAST ON ACCOUNT OF A PROOF OF CLAIM WHICH IS UNLIQUIDATED OR CONTINGENT (H) ANY UNSIGNED BALLOT, (I) ANY BALLOT CAST FOR A CLAIM THAT HAS BEEN DISALLOWED (FOR VOTING PURPOSES OR OTHERWISE), (J) ANY BALLOT WHICH IS SUPERSEDED BY A LATER FILED BALLOT, (K) SIMULTANEOUSLY CAST INCONSISTENT BALLOTS, AND (L) ANY BALLOT TRANSMITTED BY FACSIMILE OR OTHER IMPERMISSIBLE MEANS**.

If you are a holder of a Class 1, 2, 3, 4, or 5 Claim, and you did not receive a ballot, received a damaged ballot, or lost your ballot, or if you have questions concerning this Disclosure Statement, the Plan, or the procedures for voting with respect to the Plan, please contact counsel to the Debtor, Jonathan S. Pasternak, Esq. at 914-381-7400, jsp@dhclegal.com or Craig M. Price, Esq. at 212-557-7200, cmp@dhclegal.com.

8.    **Important Dates**

Please take note of the following important dates and deadlines with respect to the Plan:

| Event | Date |
|---|---|
| Voting Record Date | May 1, 2025 |
| Plan Supplement/Declaration Filing Deadline: | June 18, 2025 by 5:00 p.m. (EST) |
| Voting Deadline: | June 11, 2025 by 4:00 p.m. (EST) |

8

| Plan Confirmation Objection Deadline: | June 16, 2025 by 4:00 p.m. (EST) |
|---|---|
| Ballot Summary Deadline: | June 12, 2025 by 4:00 p.m. (EST) |
| Deadline to Reply to Plan Objections: | June 18, 2025 by 4:00 p.m. (EST) |
| Hearing on Plan Confirmation: | June 24, 2025 at 2:00 p.m. (EST) |

## II.  <u>DISCLAIMERS</u>

THE INFORMATION CONTAINED IN THIS FIRST AMENED DISCLOSURE STATEMENT (THIS "<u>DISCLOSURE STATEMENT</u>") IS INCLUDED HEREIN FOR THE PURPOSES OF SOLICITING ACCEPTANCES OF THE DEBTOR'S FIRST PLAN OF REORGANIZATION, DATED MAY 7, 2025 [DKT. NO. 1919], AS MAY BE AMENDED, MODIFIED, OR SUPPLEMENTED FROM TIME TO TIME ("<u>AMENED PLAN</u>"), AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. A COPY OF THE PLAN IS ANNEXED HERETO AS <u>EXHIBIT A</u>. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE.

**ALL HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. IN THE EVENT OF ANY CONFLICTS BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL GOVERN.**

THIS DISCLOSURE STATEMENT WAS PREPARED IN ACCORDANCE WITH SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT ALSO WILL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON SUCH HOLDER'S CLAIM.

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.**

### III.    THE PLAN

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT AND CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INTELLIGENT JUDGMENT CONCERNING IT. THE ALAN GOVERNS OVER ANY DISCREPANCY IN THIS SUMMARY.

The Plan contemplates the sale of the Immediate Transfer Units, and the subsequent sale of the Unfinished Penthouse Units. Such sales following Confirmation of the Plan shall not be subject to any stamp or similar transfer or mortgage recording tax pursuant to section 1146(a) of the Bankruptcy Code because these units will each be sold under the Plan and after the Effective Date.

**A.** **Treatment of Unclassified Claims Under the Plan**.

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims (including Professional Fees), or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9) on the Effective Date, or such other mutually agreed terms as the parties involved may agree.

1.      Allowed Non-Professional Administrative Claims:   Allowed Non-Professional Administrative Claims consist primarily of unpaid post-petition real estate taxes and unpaid post-petition fees and CAM.   These Administrative Expenses aggregate approximately $986,000.00, itemized as follows:

(i)    Post-Petition Real estate taxes - $515,236.50

(ii)   Post-Petition CAM charges - $470,792.48

All Allowed Non-Professional Administrative Expenses shall be paid in full on the Effective Date from the New Value Contribution.

2.      Allowed Claims of Professionals: All Allowed Claims of Professionals, projected to total approximately $425,000, shall also be paid from the New Value Contribution, unless a different payment structure is agreed to by the Debtor and such Professional(s).

3.      U.S. Trustee's Fees: All accrued U.S. Trustee fees under 28 U.S.C. section 1930 shall be paid from the New Value Contribution on the Effective Date.

**B.** **Classified Claims**.

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.   All holders of Claims and Interests against the Debtor, of

whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether allowed

or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Allowed Real Estate Tax Claims of the City of New York | Impaired | Yes |
| Class 2 | Allowed Condo Board Secured Claims | Impaired | Yes |
| Class 3 | Allowed Lender Secured Claim | Impaired | Yes |
| Class 4 | Allowed General Unsecured Claims | Impaired | Yes |
| Class 5 | Interests | Impaired | Yes |

**Class 1 – Pre-Petition Taxes:** Class 1 consists of the Allowed pre-petition Real Estate Tax

Claims owed to the City of New York (the "City") in the principal amount of $2,444,031.36, together

with unpaid statutory interest (the "Pre-Petition Taxes").

Treatment: The Allowed Class 1 Pre-Petition Taxes shall be paid in connection with the

proceeds of Exit Financing or over such other period as may be agreed to by the City and the Debtor

not to exceed five (5) years from the Petition Date, as permitted by Section 1129(a)(9) of the

Bankruptcy Code. The Class 1 Real Estate Tax Claims are Impaired and eligible to vote on the Plan.

Notwithstanding the foregoing, the pre-petition taxes associated with the Immediate Transfer Units

shall be paid on the Funding Date from the New Value Contribution. All Real Estate Taxes must be

paid upon transfer to the Lender and are the obligations of the Debtor.

**Class 2 – Condo Board Secured Claims:** Class 2 consists of the Allowed Condo Board

Secured Claims for pre-petition CAM in a sum to be negotiated, but not exceeding $968,395.68.

There is a dispute as to whether the Condo Board retains a secured claim for some or all of the unpaid

pre-petition CAM charges. The Debtor hopes to negotiate a settlement with Condominium Board to

12

bifurcate the pre-petition claim for CAM based upon an agreed amount. If a settlement cannot be reached with the Condo Board, the Debtor reserves the right to file objections seeking to reclassify all pre-petition CAM charges as being fully unsecured.

Treatment. The Allowed Class 2 Claims as agreed or fixed by the Court shall be paid in connection with the proceeds of the Exit Financing or at such other period of time as agreed to with the Condo Board.

**Class 3 – Lender Secured Claim:** Class 3 consists of the Allowed Lender Secured Claim in the agreed amount of $45 million, representing the balance of all pre-confirmation principal, interest, and fees.

Treatment. The Allowed Class 3 Claim shall be paid through a combination of the following transactions:

First, the Debtor shall effectuate the transfer and conveyance of the Immediate Transfer Units to the Lender or its designee as provided herein (the "Immediate Condo Transfer"). The Immediate Condo Transfer shall be made and completed on the Effective Date of the Plan or such later date as the Debtor and Lender may agree. The Immediate Condo Transfer shall be free and clear of all Liens, Claims, interests, real estate taxes, and allowed CAM charges relating to the Immediate Transfer Units, which shall be satisfied in connection with Exit Financing and/or the Immediate Condo Transfer. The Immediate Condo Transfer shall reduce the Allowed Lender Secured Claim to a balance of $23 million.

No later than one hundred-twenty (120) days after April 22, 2025, or August 22, 2025, the Debtor shall complete the Exit Financing with respect to the Unfinished Penthouse Units and pay the remaining balance of $23 million owed to the Lender, plus accrued post-confirmation interest at the rate of seven (7%) percent per annum.

13

The Class 3 Allowed Lender Secured Claim is Impaired and entitled to vote. If Debtor fails to complete the Exit Financing with respect to the Unfinished Penthouse Units on or before August 22, 2025, then, no later than 5:00 PM EST, on August 23,2025, the Debtor shall: (1) file a Notice of Failure to Close the Exit Financing on the ECF docket of the Chapter 11 Case and serve a copy on Lender's counsel; and (2) within two (2) business days of August 22, 2025, effectuate the transfer and sale of the Unfinished Penthouse Units to the Lender.

**Class 4 – General Unsecured Claims**:  Class 4 consists of the Allowed General Unsecured Claims.

Treatment.  Class 4 Creditors shall be paid a *pro rata* Distribution from the greater of: (i) the excess proceeds generated from Exit Financing after satisfaction of the Unclassified Claims and the Classified Class 1, 2 and 3 Claims plus reserves for completion of construction on the Unfinished Penthouse Units; or (ii) $200,000.

The Class 4 Allowed General Unsecured Claims are Impaired and entitled to vote.

**Interests**:  Holders of Interests shall retain their Interests in the Debtor in exchange for the New Value Contribution.

**C.  Means For Implementation.**

**Plan Funding.** This Plan shall be funded through the following sources: (i) the transfer of the Immediate Transfer Units to the Lender in partial satisfaction of the agreed Lender Secured Claim; (ii) the New Value Contribution to be made by Mr. Tessler; (iii) the closing on the Exit Financing.

All Distributions shall be made by the Disbursing Agent in accordance with Article III in the Plan, except that to the extent that a Claim becomes an Allowed Claim after the Effective Date, then such amount shall be paid within ten (10) days after the order allowing such Claim becomes a Final Order.

**Means for Implementation.**

(a)       Following the Effective Date, the transfer of the Immediate Transfer Units shall be effectuated and closed by delivery of a bargain and sale deed for each of the Immediate Transfer Units transferring all right, title, and interest in and to the Immediate Transfer Units to the Lender or its designee as provided above.

(b)       The Disbursing Agent shall, from the New Value Contribution, pay all Allowed Administrative Expense Claims, Professional Fees, and outstanding U.S. Trustee fees on the Funding Date or such later date as the particular parties may agree, except all U.S. Trustee fee shall be paid no later than the Funding Date.

(c)       Both before and after Confirmation, the Debtor shall promptly take all necessary steps to obtain Attorney General approval of an Amended Condominium Offering Plan consistent with the terms hereof.

(d)       The Debtor shall promptly apply for Exit Financing from a third-party lender with closing to occur within one hundred-twenty (120) days of April 22, 2025, or August 20, 2025.

(e)       If Debtor fails to complete the Exit Financing with respect to the Unfinished Penthouse Units on or before August 22, 2025, then, no later than 5:00 p.m. EST, on August 23,2025, the Debtor shall: (1) file a Notice of Failure to Close the Exit Financing on the ECF docket of the Chapter 11 Case and serve a copy on Lender's counsel; and (2) within two (2) business days of August 22, 2025, effectuate the transfer and sale of the Unfinished Penthouse Units to the Lender.

**Transfer and Mortgage Tax Exemption.**  The Immediate Condo Transfer together with any subsequent sale of the Immediate Transfer Units or the Unfinished Penthouse Units by the

Lender or the Debtor, respectively occurring within three (3) years of the Effective Date shall be exempt from the payment of City and State transfer taxes pursuant to 11 U.S.C. §1146(a). Likewise, the Exit Financing shall also constitute the making or delivery of an instrument of transfer pursuant to or in connection with confirmation of the Plan and shall be exempt from the payment of any mortgage recording taxes to the fullest extent permitted by 11 U.S.C. §1146(a).

**Corporate Governance.** The Debtor shall continue to be governed by its sole managing member, Madison 33 Partners, LLC, who shall become the sole managing member of the Reorganized Debtor. On entry of the Confirmation Order, the chapter 11 case of Madison 33 Partners, LLC, Case No. 24-22500, shall be dismissed with prejudice.

**Binding Effect.** On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has been deemed to accept the Plan.

**Term of Injunctions or Stays.** All injunctions or stays shall remain in full force and effect until the Chapter 11 Case is closed.

**Vesting of Assets.** Except as otherwise explicitly provided in the Plan relating to the Immediate Transfer Units to be transferred to the Lender, all other property comprising the Debtor's Estate shall vest in the Reorganized Debtor subject to all allowed continuing Liens held by the Lender or taxing authorities.

**Authority to Effectuate Plan.** Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), any treatment or actions provided for or contemplated under the Plan shall be deemed to be authorized and approved without any further

16

order or approval of the Bankruptcy Court. The Debtor shall be authorized, without further order of the Bankruptcy Court but subject to the terms of the Plan to take whatever action is necessary or proper to consummate and carry out the terms of the Plan.

**Cash Collateral.** Pending the Effective Date of the Plan, the Debtor shall continue to collect rents from the commercial units which constitute cash collateral. All cash collateral on hand as of May 31, 2025, shall be paid over to the Lender to reduce the balance of its Allowed Claim in the amount of $23 million dollars. All cash collateral received on or after June 1, 2025, through the Effective Date, shall be held in trust for and turned over to the Lender by the Debtor without any further deduction to the balance of the Lender's Allowed Claim.

**D. <u>Resolution of Disputed Claims & Reserves</u>.**

(a)    <u>Objections</u>. The Debtor or a party in interest shall file all objections to the allowance of a Claim with the Bankruptcy Court, in writing, no later than the Confirmation Date except that the Lender Secured Claim shall be fixed in the sum of $45.5 million without further objection.

(b)    <u>Reserve for Disputed Claims</u>. The Debtor shall reserve, on account of each holder of a Disputed Claim, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the date of Distribution. The Cash so reserved for the holder of such Disputed Claim shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the Allowed Claim, regardless of when Distribution thereon is made to or received by such holder.

**E.  <u>General and Miscellaneous Provisions</u>**

**Modification of the Plan**. The Debtor reserves the right, in accordance with Section 1127 of the Bankruptcy Code, to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required, except that the Debtor cannot amend or modify the treatment of the Allowed Class 3 Lender Secured Claim.

**Article and Section References.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**Payment Dates.** If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday, or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day and shall be deemed to have been completed timely.

**Enforceability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

**Applicable Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

**Successors and Assigns.** The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

**Reservation of Rights.** Neither the filing of the Plan, nor any statement or provision contained therein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Case.

**U.S. Trustee Fees and Post Confirmation Reports.** The Debtor shall be responsible for filing post-confirmation reports with the Bankruptcy Court and the Disbursing Agent shall effectuate payment all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, on behalf of the Debtor, as applicable, who shall remain responsible therefore, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

**F.    Effect of Confirmation, Discharge, Surrender and Cancellation of Claims.**

**No Discharge/Discharge Under the Plan.** Because the Plan contemplates liquidation of the Property, the Confirmation Order shall not operate as a discharge pursuant to Section 1141(d)(1) of the Bankruptcy Code with respect to the Debtor.

**Exculpation.**

**Subject to the limitations of Section 1125 of the Bankruptcy Code, neither the Debtor nor any of its respective members, officers, directors, CRO, employees, attorneys, advisors, agents, representatives and assigns (the "Exculpated Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the**

19

**formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan and any related agreement or for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 7.2 or 7.3 of the Plan shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the <u>Exculpated</u> Parties, nor shall anything in Sections 7.2 or 7.3 of the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any of the Exculpated Parties referred to herein for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority, nor shall anything in the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) limit the liability of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.**

**Confirmation Injunction.**

**Effective on the Confirmation Date, all persons who have held, hold or may hold Claims or Interests are enjoined from taking any of the following actions against or affecting the Debtor or assets of the Debtor with respect to such Claims, Interests, or Administrative Claims, except as otherwise set forth in the Plan, and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:**

**(i)    Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor regarding the Claims or Interests;**

**(ii)    Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor or the assets of the Debtor;**

**(iii)    Creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the assets of the Debtor;**

**(iv)    Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against the Debtor or the assets of the Debtor; and**

**(v)    Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.**

**Conditions Precedent.**

Conditions to Effective Date of the Plan. The following are conditions precedent to the Effective Date of the Plan.

(a)    The Confirmation Order shall have been entered and become a Final Order providing, *inter alia*, for the Immediate Condo Transfer anticipated to be July 8, 2025;

(b)      Usual and customary conveyance documents required to effectuate the Immediate Condo Transfer shall have been prepared by the Debtor, approved by the Lender or its designee, and executed by the CRO on behalf of the Debtor; and

(c)      The deposit of the New Value Contribution shall have been made on or before the Funding Date.

<u>Conditions to Substantial Consummation of the Plan</u>.  The following are conditions precedent to the substantial consummation of the Plan:

(a)      A final closing with respect to the Exit Financing as required under the Plan shall have occurred on a timely basis, no later than August 22, 2025;

(b)      If the final closing with respect to the Exit Financing fails to occur on or before August 22, 2025, then the transfer and sale of the Unfinished Penthouse Units to the Lender, shall have occurred in accordance with Section 4.3 of the Plan; and

(c)      The Debtor shall have obtained Attorney General approval of an Amended Offering Plan.

**G. <u>Distributions and Unclaimed Payments</u>.**

Except as otherwise provided herein, in the event any Creditor fails to claim any Distribution within one hundred-twenty (120) days from the date of such Distribution, such Creditor shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Disbursing Agent and the Debtor shall use their collective best efforts to obtain current addresses for all claimants. The Disbursing Agent shall notify

22

the Debtor of all returned Distributions. All unclaimed Cash shall be disbursed to equity, on a Pro

Rata basis and according to the percentage of membership interest held by such Interest holder.

**H.  Duties and Rights of Disbursing Agent.**

The Disbursing Agent shall make and effectuate all Distributions required under the

Plan. All fees and expenses of the Disbursing Agent shall be paid within twenty (20) days of

presentation of invoice.

**I.  Post-Confirmation Activities of the Debtor.**

The Debtor shall continue its efforts to obtain Exit Financing and build out the Unfinished

Penthouse Units for sale.  Upon the Closing of each such sale of an Unfinished Penthouse Unit, the

net proceeds shall be used to pay-down the Exit Financing.

Post-Confirmation Date Fees and Reserve. The Debtor shall pay all post-Confirmation Date

fees and expenses to the Debtor's professionals within twenty (20) days of presentment of invoice.

**J.  Executory Contracts.**

Upon the Effective Date, all of the Debtor's executory contracts shall be deemed assumed

free of default on the part of the Debtor.

**K.  Retention of Jurisdiction.**

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)    To determine all controversies relating to or concerning the allowance of and/or

Distribution on account of such Claims or Interests upon objection thereto which may be filed by any

party in interest;

(b)    To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334;

(d)    To determine any controversies relating to the transfer of the Immediate Transfer Units, completion of construction of the Unfinished Penthouse Units, or the consequences of the Plan Proponent's failure to meet the Conditions for Substantial Consummation of the Plan as provided in Section 8.1 of the Plan;

(e)    To remedy any defect or omission or reconcile any inconsistencies in the Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(f)    To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

(g)    To determine such other matters as may be provided for in the order of the Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the Bankruptcy Code; and

(h)    To enter a final decree closing the Chapter 11 Case following substantial consummation of the Plan.

## RISK FACTORS

**HOLDERS OF ALL CLASSES OF CLAIMS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.**

24

### A.        Risk of Non-Confirmation of the Plan.

Although the Debtor believes that the Plan will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. There can also be no assurance that modifications of the Plan will not be required for Confirmation, that any negotiations regarding such modifications would not adversely affect the holders of the Allowed Claims or that any such modifications would not necessitate the re-solicitation of votes.

### B.        Risk that Conditions to Effectiveness Will Not Be Satisfied.

The Plan contains certain conditions precedent to the effectiveness of the Plan. There can be no assurances that these conditions will be satisfied.

### C.        Claims Objection/Reconciliation Process.

The recovery to Holders of Class 4 Claims depends on, among other things the outcome of the Claims reconciliation and objection process. The Debtor has only recently begun this process and their review of Claims is very preliminary.

### D.        Sale Process and Exit Financing.

There can be no assurance of the various sale prices for the Unfinished Penthouse Units or the ability to secure the Exit Financing.

## CONFIRMATION PROCEDURE

### A.        Confirmation Hearing. The Bankruptcy Code requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan. The Confirmation hearing has been scheduled for the date set forth on the Court Order which accompanies this Disclosure Statement. The Confirmation

hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the Confirmation hearing. At the Confirmation hearing, the Bankruptcy Court will: (i) hear and determine any objections to the Plan and to Confirmation of the Plan; (ii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iii) confirm or refuse to confirm the Plan.

**B.**     **Statutory Requirements for Confirmation of the Plan**

At the confirmation hearing, the Debtor will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If so, the Bankruptcy Court shall enter an order confirming the Plan. The applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

(a)     The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b)     The Debtor must have complied with the applicable provisions of the Bankruptcy Code;

(c)     The Plan has been proposed in good faith and not by any means forbidden by law;

(d)     Any payment made or promised to be made by the Debtor under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)    The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy. Until completion of all payments to creditors as required under the Plan, there shall be no post-Confirmation compensation by the Debtor to the Debtor's existing management.

(f)    Feasibility and "Best Interest" Tests: The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test").

For a plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtor will possess the resources to meet its obligations under the Plan. Since the Plan contemplates a liquidation of all of the Debtor's assets, Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan. Until such time as the Plan is fully funded, the Debtor shall have ample reserves to ensure that there is sufficient Cash on hand to satisfy the basic and critical expenses of the Debtor.

In addition, the Bankruptcy Court must determine that the values of the Distributions to be made under the Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interests Test").

The Best Interests Test with respect to each Impaired Class requires that each holder of a Claim or Interest in such Class either: (i) accept the Plan, or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would

27

receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. In this instance, the Lender is receiving, pursuant to the agreement, less than it would otherwise outside of bankruptcy, and the Debtor's estate is being liquidated. Moreover, Mr. Tessler is obtaining the Exit Financing that will be used to complete the Unfinished Penthouse Units.  In the absence of the agreement with the Lender and the Exit Financing, the Debtor's Estate would receive almost nothing, and also be subject to the costs of administering a Chapter 7 bankruptcy, including cost of a Chapter 7 trustee.  As a result, the Plan provides all of the Debtor's creditors with recoveries in excess of what they would receive under a Chapter 7 liquidation.

In order to ensure feasibility of the Plan, the Debtor's principals have committed to maintaining, upkeeping, preserving, and insuring the Property pending the Plan effectuation and sale process described therein.

The Plan therefore satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and feasibility requirements. The Plan is "fair and equitable" and "does not discriminate unfairly". The Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code and the Plan has been proposed in good faith.

**C.      Objections to Confirmation.** Objections to confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector. Any such objection must be filed with the Bankruptcy Court and served upon the following, with a copy to the Court's chambers, so that it is received by them on or before 4:00 P.M. on the date set forth in the Court Order which accompanies this Disclosure Statement:

Davidoff Hutcher & Citron LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy Procedure 9014.

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the alternatives include: (i) preparation and presentation of an alternative plan of reorganization; (ii) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 Case, which would result in all creditors' claims and rights of collection and enforcement being restored in full.

## POST-CONFIRMATION REPORTS

The Debtor shall be responsible for filing post-Confirmation reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. § 1930 and 31 U.S.C. §3717, on behalf of the Debtor, until the earlier of: (a) conversion or dismissal of the Chapter 11 Case, or (b) entry of a final decree closing the Chapter 11 Case.

## TAX CONSEQUENCES

**Tax Consequences of Confirmation.** Confirmation may have federal income tax consequences for the Debtor and holders of Claims and Interests. The Debtor has not obtained and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations

29

promulgated thereunder. The Debtor, creditors, and holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state, and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state, and local tax consequences of the Plan, including but not limited to the receipt of Cash under the Plan.

**Tax Consequences to the Debtor.** The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

## <u>NOTICES</u>

All notices and correspondence should be forwarded in writing to:

DAVIDOFF HUTCHER & CITRON LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
Attn: Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

## RECOMMENDATION

The Debtor believes that Confirmation of the Plan is preferable to any of the alternatives described above. The Plan will provide greater recoveries than those available in liquidation to all holders of Claims. Any other alternative would cause significant delay and uncertainty, as well as substantial additional administrative costs.

Dated: New York, New York
     May 20, 2025

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, New York 1`0158
(212) 557-7200


By: */s/ Jonathan S. Pasternak*

GOLDBERG WEPREIN FINKEL GOLDSTEIN LLP
*Attorneys for Yitzchak Tessler*
125 Park Avenue, 12th Floor
New York New York 10017
(212) 221-5700


By:  */s/ Kevin J. Nash*